Argued February 2; reversed March 28, 1933

# RAUCH *v.* STECKLEIN
(20 P. (2d) 387)

*Allan Carson,* of Salem (Carson & Carson, of Salem, on the brief), for appellant.

*Howard P. Arnest,* of Portland, and *Walter C. Winslow,* of Salem, for respondent.

ROSSMAN, J. The defendant is a cobbler in the city of Mount Angel, and is also the leader of an orchestra composed of boys and young men. Paul Rauch, who was 19 years of age at the time of the accident which we shall now describe, was a member of the orchestra. August 11, 1929, the orchestra desired to play at a picnic held at a point on the Mount Hood highway known as Zigzag. A truck transported virtually all of the boys to the picnic except Paul Rauch and the two sons of the defendant who rode with him in his car. When the concert was concluded the defendant and the three boys entered his car and the return trip began. Paul was seated to the right of the defendant. About one and one-half miles before they reached Sandy the accident occurred which cost Paul his life. It was then between 5 and 6 o'clock in the afternoon, the pavement was dry and the atmosphere was clear. At the point where the accident occurred the roadway is paved to a width of 18 feet with oilbound macadam. Next to the paved roadway is a three-foot shoulder composed of loose gravel, beyond which is a ten-foot area covered with sod which gradually slopes away from the shoulder and terminates against a low embankment which marks the outer edge of the highway right-of-way. At the scene of the accident there is a slight down grade in the direction in which the defendant's car was proceeding. The highway at this point pursues a straight course for a distance of 350 feet. Before the defendant reached this straightaway he rounded a curve. The testimony indicates that

the car was proceeding at the rate of 27 to 30 miles per hour, and as it rounded the aforementioned curve its right-hand wheels got over the edge of the pavement into the loose gravel of the shoulder. The defendant described the situation thus:

"On that curve, got off in the loose gravel and I felt the car slip towards the ditch, and I made a turn to the left to get out in the road, and made another turn to the right to get on the right place but that turn was too fast.

"Q. How do you mean it was 'too fast'?

"A. Well, it was too fast, the car was out of control.

"Q. Did it come back to the right the way you expected it to, or not?

"A. No, it come more than I expected it to come.

"Q. Then what happened?

"A. After that I don't know anything until I got out of the car".

Again he testified:

"After the second turn I know something going to happen, I just felt it, and I was scared we going to hit the ditch, the bank, on the right-hand side, but the car landed on the left-hand side".

He declared that he did not know how it happened that the car overturned on the left-hand side of the highway when he anticipated the collision with the embankment to the right of the highway. He swore that his brakes were in good condition, and that he applied them as he made the turn to the left which pulled the wheels out of the gravel shoulder. Although he was not sure how long he kept his brake lever down, he swore that after the accident he observed black marks upon the pavement in a zigzag course made by the wheels of his car. From the place where a deep cut was observed in the gravel shoulder made by the wheels of the defendant's car when it first left the

pavement to the place where it overturned on the left side of the right-of-way was 350 feet. The defendant estimated that from the point where he pulled out of the gravel to the place where he made his second turn was a distance of approximately 50 feet. He added that after this 50-foot stretch had been traversed he did not know what occurred. The defendant's son, Joseph, testified that after the accident he noticed that the emergency brake was tightly set, the car was in high gear and the ignition switch was turned off. The defendant denied that he had set the emergency brake and shut off the ignition. His two sons testified that they observed no one set the brake or turn off the ignition after the car had come to a halt, and that if anyone had done so they would have observed him. John Stecklein, the other son of the defendant, testified that after the car had made the second turn he saw Paul's hand pull back the emergency brake lever and his right hand "pulled the steering wheel down". He added that he heard the clicking sound made as the brake lever was brought back. The defendant and Joseph denied that they had observed such action upon Paul's part.

The defendant testified that he had owned this car for about ten months and had driven another one for six months. To the inquiry "Had you driven very far?" he replied, "No, I just drove around home".

Section 55-1209, Oregon Code 1930, provides: "No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or

operator or caused by his gross negligence or intoxication or his reckless disregard of the rights of others''.

The first assignment of error is predicated upon the ruling of the circuit court which denied the defendant's motion for a directed verdict.

In *Storla v. S. P. & S. Trans. Co.*, 136 Or. 315 (297 P. 367, 298 P. 1065), we set forth our interpretation of this statutory enactment and our understanding of the meaning of the term ''gross negligence''. The difficulty with the definition of ''gross negligence'' which we there gave is that, while it was sufficient for the disposition of that cause, it is too abstract to be of practical service in the determination of a motion for a nonsuit or a directed verdict. Other definitions of like terms are subject to the same criticism. They generally consist of a series of synonyms. See the elaborate definition in *Altman v. Aronson*, 231 Mass. 588 (121 N. E. 505, 4 A. L. R. 1185). Most definitions state that gross negligence means great negligence, the failure to exercise slight care, or a degree of negligence materially greater than ordinary negligence. If in every instance where a guest succeeds in producing some evidence of ordinary negligence, as he has in the present instance, the court is required to submit to the jury the issue as to whether he has proved gross negligence, the above section of our laws will be deprived of a part of the usefulness which was expected of it.

■ In several of the other states, due to legislative enactment or judicial determination, the law has become established that a host is not liable to his gratuitous guest for an injury suffered during the course of transportation in the host's automobile unless the injury was inflicted through gross negligence or recklessness. We have read a score or more of the decisions of

the courts of those states, seeking a definition of the term "gross negligence" sufficiently definite and precise to serve the purposes of a motion for a nonsuit or a directed verdict, but failed to find the object of our search. While our search has failed to yield the desired result in the form of a workable definition, it has nevertheless convinced us that mere proof that the host was guilty of ordinary negligence in the operation of the car is not sufficient as a premise for an order overruling a motion for a directed verdict. Numerous cases can readily be cited in support of the statement just made. In them the uncontroverted proof showed that the host was operating his car at an excessive speed, that the car skidded, that he had failed to slow down in time for a turn in the road, that he had momentarily relaxed his lookout, that he had driven upon the left-hand side of the roadway, or violated some provision of a traffic regulation. But when the evidence showed that the host was driving his car in the night at a speed of 50 miles per hour, that it rounded curves at such excessive speed that two of its wheels left the roadway, that the guest screamed and protested that the host was driving like a madman, and when the evidence further showed that the host, while driving the car in the above described manner, attempted to round another corner but collided with a telephone pole, fence and other objects, the court held that the evidence established gross negligence: *Pepper v. Morrill,* 24 Fed. (2d) 320 (57 A. L. R. 750).

Likewise, where it appeared that the host drove his car upon a winding road at a speed that gained upon a taxicab ahead which was going at a speed of 30 or 40 miles per hour, that he had just passed a police danger sign that cautioned of a further curve in the roadway, that somehow he passed over the curbing upon the left-

hand side of the roadway and "collided with and broke down close to the ground a 12-inch cedar electric light pole. Twenty-five or 30 feet farther on it tore out about 21 feet of fence, bending over and tearing loose two or three iron posts and a brace. Some 50 or 60 feet farther on it broke down another 10 or 12-inch electric light pole, splintering it from the ground up three or four feet or more. Thirty-eight feet farther on the car struck a 6-inch box elder, tearing it up by the roots". The court held that the above warranted a finding of reckless driving: *Cerny v. Secor,* 211 Iowa 1232 (234 N. W. 193).

Likewise, where it appeared that while the host was driving upon a straight roadway at night at the rate of 40 or 50 miles per hour and attempted to pass a car ahead when another car was approaching from the opposite direction with its headlights brightly illuminated and in such close proximity that the host could not expect to avoid collision with it if he proceeded in his attempt to pass the car ahead, the court held that the circumstances warranted a finding of gross negligence: *Adair v. Newkirk,* 148 Wash. 165 (268 P. 153).

Likewise, where a motorist, without waiting for the red traffic light to change to green, proceeded through the intersection, his disregard of the traffic regulations warranted the finding that his act was a wilful and reckless one: *People v. Saroff,* 227 App. Div. 114 (237 N. Y. Sup. 73).

■ It will be observed that in the four cases just reviewed the injury was inflicted under circumstances which made the tortious act hardly an inadvertent one. The circumstances proclaimed danger and warned the motorist of impending disaster. In *Pepper v. Morrill* the guest repeatedly protested as the car plunged

ahead through the darkness of the night, rounding curves on only two wheels. In *Cerny v. Secor* the host elected to drive ahead at a high rate of speed, disregarding a police warning sign which cautioned him of the curve ahead which his high speed rendered it impossible for him to round. In *Adair v. Newkirk* the brilliant headlights of the car approaching from the opposite direction warned the host that he could not safely pass the car ahead. And in *People v. Saroff* the red traffic light which the motorist plainly saw forbade him to proceed through the intersection. In ordinary negligence the injury is inflicted inadvertently. In the above cases the motorist knew that disaster was inevitable unless he resumed the exercise of care. Accidents occur when events move too swiftly for the mind to grasp them and select a safe course. In the course of the changing events momentary thoughtlessness or an error of judgment may cause an injury to befall someone. If the injury was the inadvertent result of negative qualities of the host, and the conditions present did not proclaim danger or warn of disaster, then the above decisions indicate that the injury-inflicting act cannot be classified as negligent. It is unnecessary that the warning of disaster should be express. If the circumstances are such that the motorist, in the exercise of slight diligence, should have observed the impending danger (*Adair v. Newkirk,* supra) he becomes charged with knowledge of all that the circumstances impart. Thus, gross negligence is conduct which indicates an indifference to the probable consequences of the act. A motor-host who drives in a manner which indicates that he has no concern for consequences and an indifference to the rights of others is said to be guilty of gross negligence. The injury which

he inflicts is not entirely inadvertent. His mental qualities, therefore, differ from those of another who is guilty of only ordinary negligence. The condition of mind of the driver who plunges on ahead, grossly negligent of the rights of others, may not be such that we can say that his tortious acts are wilful or wanton, but his mind is at least indifferent to the rights of others or displays those rash qualities exhibited by the foolhardy.

■ The plaintiff does not concede that Paul Rauch was a gratuitous guest, and calls attention to the fact that the boys who belonged to the orchestra paid the defendant $1 a month as a membership fee. Apparently the orchestra made no charge whatever for its services in playing at this picnic, but played at the request of the church to which all of the members belonged. The defendant charged Paul no fee for transporting him to the picnic. It seems evident that Paul was a guest within the meaning of that word as it is used in the statute.

■ It does not seem to us that the defendant was heedless and indifferent to the safety of Paul Rauch. From the moment that he discerned the possibility of an accident he at once endeavored to extricate his car from danger. Very likely he was an inexperienced driver, or possibly an unskillful one. The slight danger in which he found himself very likely would not have disturbed an experienced motorist. The defendant made a sharp turn to the left and then another to the right, and found himself headed for the embankment to the right of the ditch. The quick movements of his car apparently alarmed him, and his excessive concern magnified the danger. Our understanding of his mental attitude can best be expressed by the use of the

term that he thereupon lost his head. The result was a most unforunate one. It, however, was inadvertent, and no portion of the evidence warrants a finding that the defendant was heedless or indifferent to the safety of others. The judgment of the circuit court was a very conservative one, but nevertheless we are persuaded to the belief that under the statute applicable to this case the plaintiff was entitled to no recovery.

The judgment of the circuit court is reversed.

RAND, C. J., BELT and KELLY, JJ., concur.