Argued November 21, 1939; affirmed January 9, 1940

# LEE *v.* HOFF ET AL.

(97 P. (2d) 715)

In Banc.

*Warren A. McMinimee* and *Geo. P. Winslow,* both of Tillamook, for appellant.

*W. H. Morrison,* of Portland (Maguire, Shields & Morrison, of Portland, and C. W. Barrick, of Tillamook, on the brief), for respondents.

ROSSMAN, J. This is an appeal by the plaintiff from a judgment of the circuit court in favor of the two defendants, entered after a jury had returned a verdict in their favor. The plaintiff, who is the mother of Edwin Lee, deceased, and administratrix of that intestate's estate, instituted this action in her representative capacity to recover the damages which the estate sustained when the son met death in a collision between an automobile driven by the defendant Carl Hoff and a motorcycle driven by the defendant Charles Kempthorm upon which the son was riding as a guest without pay. The collision occurred July 11, 1937, on the Coast highway near the point where the Wolf Creek highway enters that thoroughfare. Although both Hoff and Kempthorm are respondents, Kempthorm has submitted neither oral argument nor brief.

The complaint charges Hoff with negligence and Kempthorm with gross negligence. After alleging that each drove his vehicle without due caution and without maintaining a look-out it charges that Hoff (1)

entered upon the highway and crossed over its center line without giving a signal; (2) failed to yield the right of way to the motorcycle; and (3) drove from the right half to the left half of the roadway without ascertaining whether the movement could be made in safety. It charges that Kempthorm (1) failed "to dodge and go around" Hoff's automobile; (2) failed to avoid collision with the automobile after he saw it entering the highway; and (3) failed to cross over to the left side of the roadway after seeing that the car was upon the right half. The answers deny these averments. Hoff's answer avers that Kempthorm was guilty of negligence in the operation of his motorcycle and that plaintiff's intestate, with knowledge of the negligence, failed to remonstrate. Kempthorm's answer charges Hoff with negligent operation of the automobile.

The Coast highway at the place with which we are concerned is paved to a width of 18 feet and takes a course, roughly speaking, north and south. The center of the pavement is marked with a yellow line. The Wolf Creek highway, where it enters the Coast highway, lies east and west. Adjacent to this intersection on the east side of the Coast highway and a few feet south of the Wolf Creek highway is a service station operated by one E. Limke. Across from the station is a picnic park privately owned; a road leads into it from the highway. Fourteen miles north of this place is the city of Seaside. For 835 feet south of the intersection the Coast highway is straight, level and unobstructed.

On the afternoon of July 11, 1937, the defendant Hoff, who had been driving northerly along the Coast highway toward Seaside, drove his car upon the Limke

service station grounds and asked for a drink of water. Limke told him that a fountain was in the park across the highway. For this brief conversation Hoff had stopped his car. Its left rear wheel was about ten or twelve feet from the edge of the pavement. The front left wheel was two or three feet nearer to the pavement's edge. Hoff thought that the angle between the side of the car and the edge of the pavement was 45 degrees. Having received the information that drinking water was available across the road Hoff put his car into low gear and started across. Immediately ahead of his car on the opposite side of the highway was the road leading into the picnic grounds; that is, it was directly ahead if the car proceeded on the 45-degree angle. Hoff swore positively that before putting his car into motion he looked south along the straight stretch of highway and saw no vehicle. Limke gave like testimony. Hoff then proceeded and entered upon the pavement at the angle of 45 degrees. In proceeding he did not vary his course—his purpose was to drive into the picnic ground road. It is agreed that he drove no faster than a walk. His car was in low gear. He gave no signal of any kind to indicate his intentions.

While the above incidents were taking place Kempthorm was driving his motorcycle north on the Coast highway and was approaching the Wolf Creek junction. Lee, his friend, was seated immediately back of him as a nonpaying guest. Eight hundred and thirty-five feet south of the Limke station is a curve. When Kempthorm had rounded it he saw Hoff's car standing at the service station and when he was 200 feet from the station observed that the car was starting. At this moment Lee called out, "Look out, that car is

starting." Kempthorm at this moment, in order to improve his vision, raised his goggles and saw that the car was heading for the pavement at an angle which he (Kempthorm), as a witness, described as "about a 45-degree angle." He swore that at that time he thought that the car after entering upon the right half of the pavement would change its course and proceed north toward Seaside. He then "turned back the gas and got ready to put my foot on the brakes if I needed it, I started slowing down, I started going across the yellow line so I could go around on the left-hand side so I could pass him." He thought that his speed before he had lessened it was "around forty miles" per hour, and that after he had reduced the pressure upon the accelerator it was "around thirty or thirty-five miles an hour." Up to this time Kempthorm had not inferred that Hoff intended to cross the pavement, but when he saw that the car did not right its course and turn north he applied the brake to the motorcycle's rear wheel. The application of the brake left a skid mark 60 feet in length along the dry pavement, indicating, of course, that for that distance the rear wheel was locked. Kempthorm's efforts failed to prevent a collision. The motorcycle crashed into the left side of the automobile causing the death of Lee.

Kempthorm at first was positive that the collision occurred on the left side of the highway while both vehicles were upon the pavement. However, when his attention was called to testimony which he gave upon a previous trial of this cause, he said, "I don't know exactly, I would not say all of it (the automobile) was, I don't know exactly." He swore that the reason for the collision was Hoff's omission to give a signal, explaining, "I didn't know where he was going."

Hoff, besides swearing that he looked south along the course of the highway before entering and that he saw nothing, swore that when the motorcycle crashed into the left side of his car the latter was "about seven or eight feet from the highway down toward the park." Chester Miller, a witness for the plaintiff, testified that the automobile's "two front wheels were clear off of the pavement" when the motorcycle ran into its left side. W. M. Hollingsworth, another witness for the plaintiff, swore that the automobile "stopped with one wheel off the pavement and the left-hand rear wheel just ready to leave the pavement." Limke, as a witness for the defendants, declared that he watched the motorcycle approach the car and that when the impact occurred "Hoff's car was twelve feet off the pavement." Mrs. Alma Collard, who saw the collision occur, thought that it took place "ten feet or more off the highway". Donald Bodley, also a witness for the defendants, said that the automobile was "probably eight or ten feet at least" off the pavement when it was struck. Mrs. Hoff testified that the motorcycle hit their car when the latter's rear wheels were four or five feet off the pavement. Hoff was positive that his car was standing still when it was struck.

Mrs. Collard, who was seated in the picnic place when the accident occurred, described the motorcycle's speed as "terrific". Bodley, who was standing on the highway about 200 feet from the scene of the collision when the motorcycle passed him, estimated its speed as "at least 60 miles an hour." He turned around and looked at the motorcycle again when he heard the squealing sound made by the locked tire as it scraped along the dry pavement. We quote from his testi-

mony: "It was going right down the center of the track, in the center of the road, and it turned sideways and tipped over and slid from there into the car."

The above review of the evidence will suffice for present purposes.

The plaintiff argues that the trial judge committed error when he declined to instruct the jury as follows:

"I instruct you that it is the duty of the driver of any vehicle upon a highway before starting, stopping or turning from a direct line to first see that such movement can be made in safety, and whenever the operation of any other vehicle may be affected by such movement the driver of such vehicle shall give a signal plainly visible to the driver of such other vehicle of the intention to make such movement."

"I instruct you that whenever any highway has been divided into clearly marked lanes for traffic, it is the duty of drivers of vehicles to drive as nearly as is practicable entirely within a single lane and such vehicle shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

"I instruct you that, whenever the operation of any other vehicle may be affected, it is the duty of the driver of a vehicle, upon entering the main traveled or paved portion of any state highway at such an angle that an ordinary person could not readily ascertain whether or not the driver of said entering vehicle intends to cross said highway or to proceed along said highway, to give a plainly visible signal before crossing said highway."

The instructions which were given to the jury upon these subjects follow:

"We will now take up the duties of the defendant, Hoff, under the conditions outlined in the pleadings. I instruct you that it is the duty of every person who drives any vehicle upon a highway to drive the same carefully with due caution and circumspection and in

a manner so as not to injure or be likely to injure any person or property. * * *

"The law does not provide for any signal to be given by the driver of an automobile about to cross or while crossing a highway; so, under those conditions it is the duty of a person crossing the highway to use the care of an ordinarily prudent person, and if, under the conditions disclosed by the evidence an ordinarily prudent person in the defendant's Hoff's position, would have given some signal, then it would be the duty of the defendant, Hoff, to give the signal; but, if under those conditions a reasonably prudent person would not have given the signal, then there would have been no duty on the defendant Hoff to have given a signal."

The sections of our motor vehicle act which the plaintiff cites as pertinent to this assignment of error are §§ 55-2302 (b) and 55-2309, Oregon Code 1935 Supplement. The material parts of those sections follow:

"Whenever any street or highway has been divided into clearly marked lanes for traffic, drivers of vehicles shall obey the following regulations:

(a) A vehicle shall normally be driven in the lane nearest the right-hand edge or curb. * * *

(b) A vehicle shall be driven as nearly as is practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

(c) Upon a highway which is divided into three (3) lanes a vehicle shall not be driven in the center lane except when overtaking * * *." (§ 55-2302)

"A driver of any vehicle upon a highway before starting, stopping or turning from a direct line shall first see that such movement can be made in safety, * * * and whenever the operation of any other vehicle may be affected by such movement shall give a signal * * *." (§ 55-2309)

■■ We do not believe that these two sections of our laws have application to the situation before us. Section 55-2302, we believe, applies to those whose course in general is along the highway; Hoff was endeavoring to cross the highway. The instructions stated that a motorist is not prohibited from crossing a highway in a diagonal direction, but added that it was Hoff's constant duty to drive "carefully with due caution and circumspection and in a manner so as not to injure or be likely to injure any person * * *. It was the duty of the defendant Hoff to maintain a reasonably constant and continuous lookout * * *. That means not only to look, but it means to see and observe. * * * it would be negligence to look and not to see that which an ordinarily prudent person could see." Section 55-2309 above quoted exacts signals from drivers who stop, start or turn their vehicles "upon a highway." Hoff's car, according to the complaint, had stopped "entirely off of the Oregon Coast highway and on private property." When it was placed in operation again it started from the filling station grounds and proceeded in a straight line to the picnic grounds. From the time it started until the crash occurred it did not change its course. Therefore, it did not stop, start or turn upon the highway, and since this is true § 55-2309 had no application to it.

■■ But the mere fact that no provision of our motor vehicle statutes required Hoff, as he entered upon and then proceeded across the highway, to indicate his intention by a signal, did not place him at liberty to decline to make known his intentions if due regard for the safety of others demanded that he somehow announce them. The requirements of our statute are imperative but not exclusive. The common-law doctrine

that each in the exercise of his rights must exercise due care for the safety of others pervades all relationships unless a statute abrogates or modifies that duty. Accordingly, in all instances where the legislature has not defined the duty of a user of the highway as he makes a movement upon it this omnipresent common-law doctrine is applicable and demands that the individual conform to the standards of a reasonable man. If citation to authority is necessary to buttress these statements, we refer to Restatement of the Law, Torts, (Negligence) § 285, Thompson on Negligence, § 13, and Blashfield, Cyclopedia of Automobile Law, (Perm. Ed.) § 701.

 In a preceding paragraph we quoted an instruction given to the jury concerning Hoff's nonstatutory duty to indicate, if necessary, his contemplated movements upon the roadway. We believe that the instruction correctly stated the legal principle set forth in the paragraph next above. The common law makes no arbitrary demand that a signal must be given when there is no one upon the highway to see it. Hoff swore positively that before he placed his car in movement he looked carefully south along the course of the roadway and could see no vehicle. The pavement was unobstructed for 835 feet to the bend, and Hoff was in a favorable position to obtain a good view. Limke swore that he, too, looked down the highway before Hoff started and that he could see nothing except some people on foot. But, the motorcycle was nevertheless approaching. Possibly it was being operated at an excessive speed (substantial evidence so indicates) and thus reached the scene of the mishap before the Hoff car moved further. If that is true then we have an explanation for Hoff's and Limke's failure to have

seen it as they scanned the roadway. Hoff was not required to assume that a speeding vehicle might be around the curve rushing upon him at such an excessive speed that it would become concerned with his movements which might otherwise be made in complete safety. As we have just said, we think that the instruction correctly stated the legal principle applicable to the situation. The words "the law does not provide for any signal," which form a part of the instruction, were not well chosen; but the language which immediately follow them makes it clear that the term "the law" was used as a synonym for "the statutes." We do not believe that the jury could have been misled. At any rate, the plaintiff's exceptions to this instruction did not single out the misuse of the term "the law" and request a correction. The assignment of error predicated upon the above instruction and the ones requested are, in our opinion, without merit.

■ Next, the plaintiff contends that error was committed when the jury was instructed "if you find from the evidence in this case that the automobile of the defendant Carl Hoff was stopped off of the pavement or main traveled portion of the highway at the time of the collision, then the question of the right of way is not involved in this case and you should disregard that question." The jury was not so told, however, until after the trial judge had stated: "I charge you that it is the duty of a driver of a vehicle before entering a public highway from a private road or driveway to stop and yield the right of way to all vehicles approaching on such public highway * * *. The law does not specify the number of feet the driver of an automobile should stop from the highway before proceeding across it, but the stop would have to be made at a point where

the driver could observe the traffic on the highway which might be affected by his entrance upon the highway.''

The exception to the challenged instruction so far as it disclosed the basis of plaintiff's criticism, follows: ''I think that would be, under the circumstances of this case, would be clearly error on account of him going across diagonally, and have to be limited and qualified as to how it got over there.''

The part of the instruction given which declared that a car entering a public thoroughfare from a private one must yield the right of way to cars upon the highway employs the phraseology of the first paragraph of § 55-2312, Oregon Code 1935 Supp., and was given to the jury at the request of the plaintiff. Plaintiff's brief states that the challenged instruction (a) singled out a fact to the exclusion of other facts; and (b) ignored other pertinent facts. It further says that the words ''approaching on such public highway'' found in § 55-2312 mean that the driver upon the private road must yield the right of way to all cars upon the highway with which there is a reasonable likelihood of collision, and that those upon the private road must exercise the judgment of reasonable men in determining whether there is likelihood of collision.

As we have just stated the trial judge read to the jury the part of § 55-2312 which the plaintiff requested. The suggestion now made that the words ''all vehicles approaching on such public highway'' needed explanation was not incorporated in the requested instruction, nor was it announced when the exceptions were taken. The words just quoted are not novel, but are a part of the layman's everyday vocabulary. We are not satisfied that in this case they needed explanation.

 Plaintiff's principal contention is that the instruction which stated that if the Hoff car had stopped off the "main traveled portion of the highway at the time of the collision, then the question of the right of way is not involved," singled out the fact just mentioned to the prejudice of other pertinent facts. It will be recalled at least five witnesses testified that the Hoff car was several feet off the pavement when the motorcycle crashed into the left side of the car. One of these said that it was at least twelve feet from the edge of the pavement. Hoff and others swore that his car had stopped before it was hit. We agree that it is improper for instructions to single out some particular fact and, by unnecessarily giving it emphasis through the medium of an instruction, possibly create in the minds of the jurors a false impression concerning its importance. But we see in the instruction under review no infringement upon that rule. Hoff claimed that his car was completely off the main-traveled part of the highway when the impact occurred, and that therefore the right of way rule had no application to the situation. The plaintiff claimed that the collision occurred when both vehicles were upon the highway and that the motorcycle was entitled to the right of way. At the plaintiff's request, an instruction was given which stated the legal principles applicable to the situation described by her witnesses. The challenged instruction was a statement of the legal principles applicable to the facts vouched for by Hoff. Thus, no fact was emphasized to the detriment of any other fact, but each competing set of facts was made the subject-matter of an instruction dealing with the law applicable to it. We find no error disclosed by this contention.

Next, the plaintiff contends that the instruction erroneously defined the term "gross negligence." Most of the definition was quoted from the last five sentences of the paragraph which is numbered two in *Rauch v. Stecklein*, 142 Or. 286, 20 P. (2d) 387. However, that part of the definition was preceded by the following: "Gross negligence is negligence that borders on recklessness or wantonness, and as applied to the operation of motor vehicles, implies a positive disregard of the rules of diligence and imports a recklessness or heedlessness of consequences. It is such a want of care that would raise an inference of conscious indifference of consequences." Then came the five sentences above indicated followed by: "It is something more than inattention; in fact, it is the exhibition in the operation of a car of an I-don't-care-what-happens mental attitude."

Plaintiff's criticism of this definition of the term "gross negligence" is thus expressed in her brief: "It is not necessary to give evidence of a positive disregard of the rules of diligence or of a mental attitude of I-don't-care-what-happens."

If the jury inferred that "a positive disregard of the rules of diligence" meant an affirmative or willful disregard of duty, then an erroneous conception was created by the use of those words. But if those words were understood to mean a definite, real or actual disregard of the demand that due care be employed, no error was involved in their use. It seems clear that the word "positive" was used as the equivalent of "definite" or "actual" because the instructions proceeded to say, "would raise an inference of conscious indifference of consequences." Conscious indifference does not amount to willful or wanton disregard of duty. Again, the definition, in quoting from the Rauch decision, said: "The

condition of mind of the driver who plunges on ahead, grossly negligent of the rights of others, may not be such that we can say that his tortious acts are willful or wanton, but his mind is at least indifferent to the rights of others * * *.'' We believe that these and other parts of the definition told the jury that willfulness and wantonness were not essential elements of gross negligence.

■ The latter part of the definition which stated that gross negligence implies an ''I-don't-care-what-happens mental attitude'' finds support in *Storm v. Thompson*, 155 Or. 686, 64 P. (2d) 1309; *Monner v. Starker*, 145 Or. 168, 26 P. (2d) 1097; *Cockerham v. Potts*, 143 Or. 80, 20 P. (2d) 423; *Rauch v. Stecklein*, supra; and *Storla v. S. P. & S. Trans. Co.*, 136 Or. 315, 297 P. 367, 298 P. 1065.

The exception to this instruction follows:

''The court went too far in the instruction on gross negligence, that is, requiring that considerable more evidence than is necessary to establish gross negligence.''

We do not believe that this exception reveals any error in the definition.

■ The plaintiff next contends that error was committed when two requested instructions prepared by her, which stated the rule concerning concurrent negligence, were not read to the jury. However, the trial judge, in language which was apt and understandable, told the jury that if (a) the deceased was not guilty of contributory negligence; (b) Hoff was guilty of negligence; (c) Kempthorm was grossly negligent; and (d) the negligent conduct of the two combined and became the proximate cause of Lee's death, the plaintiff was entitled to recover. The plaintiff does not criticize or

even mention this instruction. Its language, we believe, was peculiarly well chosen. No error is revealed by this assignment of error.

 Next, the plaintiff argues that error was committed when the jury was instructed, at the request of Hoff, as follows:

"* * * If the motorcycle upon which the deceased was riding was being operated at an excessive and dangerous rate of speed immediately prior to said accident, it was his duty to remonstrate with the defendant, Kempthorm, and to request the defendant, Kempthorm, to slow down the speed of said motorvehicle, and if he fails to do this he would be guilty of negligence. * * * If the deceased, Edwin Lee, was guilty of negligence in one or both of the particulars outlined which proximately contributed to his injury and his death, then the plaintiff can not recover."

Plaintiff's exception to this instruction follows:

"Plaintiff also excepts to the instructions given at the request of the defendant Hoff, particularly three, five, * * *"

Kempthorm, as a witness for the plaintiff, testified that he could have stopped his motorcycle before reaching the service station if he had attempted to do so when Lee called out, "Look out, that car is starting." In describing himself, he stated, "I wasn't an expert rider or anything like that." Although both wheels of the motorcycle were equipped with brakes, Kempthorm used only the rear wheel brake upon this occasion. We mention these items only for the purpose of indicating that an instruction upon Hoff's defense of contributory negligence was proper.

In *Davis v. Puckett Co.*, 144 Or. 332, 23 P. (2d) 909, Mr. Justice KELLY, on behalf of this court, said:

"These exceptions do not disclose wherein the instructions were alleged to be incorrect or insufficient, and did not give the trial court an opportunity to correct the error, if any, by amplifying the instructions or eliminating objectionable matter. For these reasons we do not feel warranted in considering the objections now urged thereto. Section 2-702, Oregon Code 1930; Campbell Co. v. Corley, 140 Or. 462, 3 P. (2d) 776, 13 P. (2d) 610; Lott v. De Luxe Cab Co., Inc., 136 Or. 349, 299 P. 303; Blanchard v. Makinster, 137 Or. 58, 290 P. 1098, 1 P. (2d) 583; 14 R. C. L. 795, 808, 809."

The same observation is applicable to the exception now before us. It does not mention, even remotely, the purported error. Many times "the atmosphere of the trial" renders proper a given instruction which appears to be erroneous when examined in the calm contemplation of appellate review. When a requested instruction is given a general exception does not suffice. The alleged error must be mentioned, thus affording an opportunity for its correction. We are clearly satisfied that the above exception does not suffice as a basis for the plaintiff's contention.

██ The last assignment of error is based upon rulings made during the examination of the defendant Hoff as a witness. It will be remembered that the plaintiff called Hoff as one of his witnesses. Apparently the plaintiff believed that since the defendants were adverse parties he could ask Hoff leading questions, whether Hoff was hostile to the plaintiff's cause or not. The denial of this alleged right and rulings made adverse to the plaintiff during the course of the latter's cross-examination of Hoff are the subject-matter of this assignment of error.

The plaintiff asked Hoff, among other questions, "When you drove in there you intended to get the

drink of water and then proceed on to Seaside, did you?'' An objection was made to this question on the ground that it was leading. In sustaining the objection, the trial judge stated: ''If he shows any hostility the Court will grant permission to ask leading questions.''

Section 9-1904, Oregon Code 1930, which unfortunately is often overlooked in the exercise of judicial powers, says:

''The court may exercise a reasonable control over the mode of interrogation, so as to make it as rapid, as distinct, as little annoying to the witness, and as effective for the extraction of the truth as may be; * * *.''

From § 770, Wigmore on Evidence (2d Ed.), we quote:

''So much depends on the circumstances of each case, the demeanor of each witness, and the tenor of the preceding questions, that it would be unwise, if not impossible, to attempt in an appellate tribunal to consider each instance adequately. * * * no favor is shown in the appellate tribunal to objections based merely on the form of the question.''

We are satisfied that no error is revealed by the contention that the plaintiff was denied a right to ask Hoff leading questions. The form of the question is intrusted to the discretion of the trial judge. The record indicates no abuse of this discretion.

We have carefully considered the contention that the plaintiff's right to cross-examine Hoff was unduly impeded. We read the entire transcript of the testimony but found nothing which would warrant a belief that the plaintiff was prevented from asking Hoff, upon cross-examination, any questions pertinent to the matters developed upon his direct examination. So far as

we can determine every material fact was fully developed. This contention is without merit.

The above is our disposition of the contentions presented by the plaintiff. Not all of the authorities cited by her counsel are mentioned herein, but all received careful attention.

The judgment of the circuit court is affirmed.

RAND, C. J., and KELLY, BELT, BEAN, BAILEY and LUSK, JJ., concur.