Argued September 6; affirmed September 27, 1949

# BAIRD *v.* BOYER
## 210 P. 2d 118

*Willis A. West* argued the cause for appellant. With him on the brief were Clark & Clark, all of Portland.

*Glen McCarty*, of Portland, argued the cause and filed a brief for respondent.

Before BRAND, Acting Chief Justice, BAILEY, HAY and PAGE, Justices.

BAILEY, J.

This action was brought by Bazil Baird against Wilmer Boyer and Roland Schneider to recover damages for personal injuries suffered by plaintiff in a collision, at the intersection of N. W. Hoyt Street and N. W. Broadway Avenue, Portland, Oregon, between an automobile driven by Boyer, in which Baird was a guest passenger, and a truck driven by Schneider.

The cause was tried before the court and a jury. At the conclusion of plaintiff's evidence a judgment of involuntary nonsuit was entered in favor of defendant Schneider. At the conclusion of all the evidence defendant Boyer's motion for a directed verdict was denied and the cause was submitted to the jury which returned a verdict in favor of plaintiff and against defendant Boyer for the sum of $2,500. The judgment entered thereon was, on motion of defendant Boyer, set aside and a judgment notwithstanding the verdict was entered in his favor pursuant to section 6-707, O. C. L. A., as amended (Ch. 309, Oregon Laws 1941, and Ch. 149, Oregon Laws 1945). From this judgment plaintiff has appealed.

Northwest Broadway Avenue, where the collision occurred, extends north and south. It is a through street and is intersected at right angles by N. W. Hoyt Street. For two or more blocks northward from this intersection N. W. Broadway Avenue forms one of the two approaches to the Broadway bridge on the west side of the Willamette River, and is referred to in the record as the Broadway ramp. The other approach is known as the Lovejoy ramp. It extends east and west. Traffic entering or leaving Broadway bridge over these ramps, except traffic westward over the Lovejoy ramp, is regulated by traffic signals at a point where these ramps

join. From that point to N. W. Hoyt Street, a distance of approximately two blocks, Broadway ramp slopes downward at a grade, estimated by plaintiff, of ten per cent. The southern end of this ramp reaches level grade at its intersection with N. W. Hoyt Street, the place of the accident.

The accident occurred between 4:00 and 4:30 p. m. on the 21st day of August, 1946. At that time plaintiff and defendant were about 20 and 19 years of age respectively. They were residents of Ontario, Oregon, and were familiar with the traffic in Portland. They were, as hereinbefore stated, riding in a car driven by Boyer, who hereinafter will be referred to as the defendant. The car was driven across Broadway bridge from east to west and southerly over the Broadway ramp. Plaintiff testified that traffic on the Broadway bridge "was moving along as far as I know, just regular traffic", and that the car in which he was riding was moving "along with the rest of" the traffic, at the "same speed." He stated that after they turned southward on the Broadway ramp "there wasn't, as I can remember, any cars closely ahead of us; there may have been some down at the bottom of the ramp someplace; but we turned onto the ramp and started down it, and Mr. Boyer started speeding up along there someplace, I don't know exactly how far down, and down toward the lower part of the ramp I noticed a truck turning in front of him and I said, 'Watch out, you are going to hit that truck.' He says, 'I know it,' and slammed on his brake and we hit the side of the truck with the front end of the car."

Baird stated that the truck was traveling northerly on N. W. Broadway Avenue "on the inside lane next to the yellow line". He thought the truck was about 75

feet away when he first saw it and the driver of the truck "had started his turn, going into the turn." He did not see the driver thereof give any signal. He said he knew the defendant "was going at least 40 miles an hour, not more than 60; between 40 and 60"; that defendant told him he was going over 30 miles an hour; that when he told the defendant that he was going to hit the truck defendant "slammed on the brakes and he slid a considerable distance into the intersection and hit the truck approximately where the rear dual wheels of the truck are"; that defendant "must have slid 25 feet, 20 feet to 25 feet at least." Asked how far they were from the truck when he told Boyer "to look out", Baird said, "Oh, between 50 and 100 feet, I would say * * * somewhere in there." Northwest Broadway Avenue, including Broadway ramp, has four lanes of traffic.

Plaintiff described the damage done to the defendant's automobile as follows: "the right front fender was pretty well smashed up, and the headlight and the bumper and the grille and the hood was sprung, and the right front windshield was broken and the mirror on the sun visor was broken, and the right door was bent to some degree, and Mr. Boyer bent the steering wheel with his chest. I am not sure whether the left front headlights were broken—headlight was broken out or not. The right wheel was sitting at a funny angle; it was bent too." He thought the drive shaft of the truck was broken or loosened.

Plaintiff testified that the defendant's car came to rest right after the collision "Right up against the truck just about right - - -"; that the truck was in the northwest part of the intersection and that "neither car moved a great distance" after the collision; that the truck was going "10 or 15 miles an hour" when it

turned westerly in the intersection; and that he saw no "skid marks on the pavement caused by the truck".

Defendant Boyer testified that he saw the truck proceeding northward on N. W. Broadway Avenue before it turned west on N. W. Hoyt Street. He stated that "about 50 or 60 feet in front of me he [the truck driver] turned" west of N. W. Hoyt Street "and I couldn't stop." In answer to the question as to what his speed was when he "came down this ramp before the accident", defendant said, "Well, I was riding along with just the rest of the traffic and going down the ramp the first time—I have noticed it since then too that cars speed up a little bit, so I speeded up too at the same time, and I don't think that I was going much over 40; 40 I think was about the top speed. It could have been more, it could have been less; I don't think it was any more than 40." Later on in his testimony, referring to his speed, Boyer testified: "Well, it was over 25, and I don't think it—well, either around 40; I know it wasn't over 45. I didn't look at the speedometer at the time but I would estimate it at about that." He further testified: "I just thought I was keeping up with the rest of traffic. I can't remember passing anybody. * * * As I recall, one passed me just before he went by that stairway thing."

The accident occurred in a business district of the City of Portland where the statutory indicated speed is 20 miles per hour. Defendant pleaded guilty in the Municipal Court of the City of Portland to the charge of reckless driving in connection with this accident.

The foregoing summary includes all the evidence which is material to the one question presented on this appeal. That question, raised by the only assignment of error, is whether there is any substantial evidence

that the accident in which plaintiff, who was a guest passenger in defendant's car, suffered his injuries was caused by the gross negligence of defendant Boyer or by his reckless disregard of the rights of others. The statute which governs this action is section 115-1001, O. C. L. A., and reads as follows:

"No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator or caused by his gross negligence or intoxication or his reckless disregard of the rights of others."

■ The term "gross negligence" is not defined by statute nor has this Court formed a general definition thereof applicable to all cases. *Storm v. Thompson,* 155 Or. 686, 692, 64 P. (2d) 1309; *Ross v. Hayes,* 176 Or. 225, 238, 157 P. (2d) 517, 158 A. L. R. 452. The terms "gross negligence" and "reckless disregard of the rights of others" have heretofore been defined and explained in numerous decisions of this Court. See *Ross v. Hayes,* supra. One of such definitions of gross negligence, formulated in *Rauch v. Stecklein,* 142 Or. 286, 20 P. (2d) 387, is as follows:

" * * * Thus, gross negligence is conduct which indicates an indifference to the probable consequences of the act. A motor-host who drives in a manner which indicates that he has no concern for consequences and an indifference to the rights of others is said to be guilty of gross negligence. The injury which he inflicts is not entirely inadvertent. His mental qualities, therefore, differ from those of another who is guilty of only ordinary negligence. The condition of mind of the driver who plunges on ahead, grossly negligent of the rights of others, may

not be such that we can say that his tortious acts are wilful or wanton, but his mind is at least indifferent to the rights of others or displays those rash qualities exhibited by the foolhardy.''

■ This excerpt has been quoted with approval in many Oregon cases, some of which are cited in *Ross v. Hayes,* supra. See also *Lawry v. McKennie,* 177 Or. 604, 611, 164 P. (2d) 444; *Callander and Stone v. Brown,* 181 Or. 279, 287, 178 P. (2d) 922. *Lee v. Hoff,* 163 Or. 374, 389, 97 P. (2d) 715, 721, holds that gross negligence is something more than inattention; that it is ''the exhibition in the operation of a car of an I-dont'-care-what-happens mental attitude.'' Each case depends to a large extent upon its own particular facts and circumstances. *La Vigne v. La Vigne,* 176 Or. 634, 641, 158 P. (2d) 557.

The automobile guest statute of Connecticut, which ''very likely inspired the Oregon law'', *Storla v. S., P. & S. Trans. Co.,* 136 Or. 315, 322, 297 P. 367, 298 P. 1065, is discussed at considerable length in *Bordonaro v. Senk,* 109 Conn. 428, 147 A. 136. Under that act the liability of the owner or operator of a motor vehicle to his non-paying guest is limited to two classes. They are described by the Court as follows:

'' * * * First, when the accident was caused by the intentional act or conduct of the owner or operator. * * * Second, when the accident was caused by the heedless and reckless disregard of the rights of others by the act or conduct of the owner or operator. Heedless in this connection means careless; it does not add to the significance or the characterization or the force of the act or conduct done in reckless disregard of the rights of others by the owner or operator. Act or conduct in reckless disregard of the rights of others is improper or wrongful conduct, and constitutes wanton misconduct,

evincing a reckless indifference to consequences to the life, or limb, or health, or reputation or property rights of another."

The case of *Vanderkruik v. Mitchell*, 118 Conn. 625, 173 A. 900, is very similar in many respects to the instant case. It involved the construction of the motor vehicle guest statute of Connecticut. Plaintiff's decedent was killed in a collision at the intersection of Park Avenue and State Street in the City of Bridgeport, Connecticut, between the automobile of defendant, in which he was a guest passenger, and another automobile. Defendant was traveling at an established speed of 45 to 50 miles an hour on State Street, which is a main artery for trucks using the Boston Post road through Bridgeport. Park Avenue is the main artery for cross-town traffic in that city. The vicinity where the mishap occurred "is thickly settled; traffic is to be anticipated at any time on both streets". In denying recovery the Court observed:

"However, a plaintiff's verdict can only be sustained by proof of something more than negligence. The evidence must show an indifference to the consequences of the driver's conduct, or a reckless disregard of or indifference to the safety of the passenger. *Berman v. Berman,* 110 Conn. 169, 171, 147 A. 568; *Bordonaro v. Senk,* supra. As we read the evidence, we cannot escape the conviction that Mitchell's conduct was attributable merely to thoughtlessness, inadvertence, or an error of judgment, and cannot fairly be said to have been a heedless and reckless disregard of the safety of his friends who were with him. [Citing many authorities]"

The Court quoted with approval the following from *Ascher v. Friedman, Inc.,* 110 Conn. 1, 147 A. 263:

" * * * In her haste to get home before the threatened thunder-storm broke, the driver of this

car turned from the street into the driveway without slackening her speed, with the result that the car failed to make the turn and mounted the curb. The accident was the result of a momentary bit of careless driving, a failure to exercise due care. There was nothing in the conduct of the defendant to indicate that she was operating the car with reckless disregard of the rights or safety of her own children and of her sister who was riding with her.''

■■ There is no substantial evidence in the record to support the allegation that the accident in which plaintiff was injured was caused by defendant's gross negligence or his reckless disregard of the rights of others. It cannot be said that his operation of the automobile indicated a mind ''indifferent to the rights of others'', or having ''those rash qualities exhibited by the foolhardy'', or having an ''I-don't-care-what happens'' attitude. We think that defendant's conduct was ''attributable merely to thoughtlessness, inadvertence, or an error of judgment''. Such conduct does not indicate a reckless disregard of the rights of others.

■■ In determining whether error was committed by the Circuit Court in entering judgment for the defendant, we must consider the evidence in the light most favorable to plaintiff. This we have done. Plaintiff's testimony that defendant was traveling between 40 and 60 miles an hour does not prove, or tend to prove, that he was going at a speed substantially greater than 40 miles. The damage to the car and truck does not indicate an excessive rate of speed. Defendant stated that he might have been traveling at the rate of 45 miles per hour, but knew he was not traveling faster than that. When informed by plaintiff that he was going to hit the truck defendant ''slammed on the brakes'', and did everything he could to avoid a collision. The fact that

defendant pleaded guilty to a charge, in the Municipal Court, of reckless driving, does not tend to prove that the accident was caused by his gross negligence or by his reckless disregard of the rights of others.

Plaintiff relies principally on *Hartley v. Berg,* 145 Or. 44, 25 P. (2d) 932; *Monner v. Starker,* 147 Or. 118, 31 P. (2d) 1109; *Herzog v. Mittleman,* 155 Or. 64, 65 P. (2d) 384, 109 A. L. R. 662; *Storm v. Thompson,* supra; *Layman v. Heard,* 156 Or. 94, 66 P. (2d) 492; and *Melcher v. Adams,* 174 Or. 75, 146 P. (2d) 354, in support of his contention that the judgment entered in the Circuit Court in favor of defendant was erroneous. We have carefully considered all these cases and are of the opinion that they are not inconsistent with the conclusion here reached. The facts in the cases last above mentioned are materially different from those in the instant one.

The judgment appealed from is affirmed.