Argued June 5, reversed October 2, petition for rehearing
dismissed November 6, 1957

# GANTENBEIN *v.* HUCKLEBERRY
### 315 P. 2d 792

*Harry F. Samuels* argued the cause for appellant Mae Huckleberry. On the brief were Vergeer & Samuels and Charles S. Crookham, all of Portland.

*Wendall Wyatt* argued the cause for respondent Lora Gantenbein. On the brief were Norblad, Wyatt & Macdonald, Astoria.

Before PERRY, Chief Justice, and ROSSMAN, LUSK and WARNER, Justices.

ROSSMAN, J.

This is an appeal by the defendant, Mae Huckleberry, from a judgment in the sum of $10,000 which the circuit court entered in favor of the plaintiff after the jury had returned its verdict. The action which terminated in the entry of the challenged judgment arose out of a collision of an automobile, operated by defendant Mae Huckleberry, in which the plaintiff was riding as a nonpaying guest, and a truck driven by the other defendant, Richard Patterson. The complaint averred that defendant Mae Huckleberry operated her automobile in a reckless and grossly negligent manner. Judgment was entered in favor of defendant Richard Patterson after the court had sustained his motion for an involuntary nonsuit. No appeal was taken from that judgment.

We will hereafter speak of the plaintiff-respondent as the plaintiff and of defendant-appellant Mae Huckleberry as the defendant. The latter presents three assignments of error. The first charges that the circuit court erred when it overruled the defendant's motion for an order of involuntary nonsuit. The second and third are based upon instructions which the defendant

requested but which the court declined to give. We will now consider the first assignment of error.

The aforementioned collision occurred in the intersection of U. S. Highway 101 and a thoroughfare known as Columbia Beach road. U. S. Highway 101, to which we will hereafter refer as the highway, pursues a northerly-southerly direction. Columbia Beach road abuts upon the highway from the west but does not intersect it. For one who drives north on the highway, Columbia Beach road lies to his left and takes a northwesterly direction; therefore, a driver who is proceeding north, as the defendant was doing, and who wishes to turn into Columbia Beach road, as the defendant was asked to do, must make a left-hand turn from the highway into the road. He need not, however, make a turn of 90 degrees. The road leads from the highway at an angle of 45 degrees.

April 7, 1953, the plaintiff, the defendant and others had attended a flower show in Pacific Grange hall which is located on the highway. After lunch, mention was made of an attractive array of azaleas at the home of a Mrs. Feiselman on Columbia Beach road, and thereupon the defendant invited four of those present, including the plaintiff, to accompany her in her automobile to the Feiselman home. The hour was about 2:30 p. m. As the party entered the defendant's automobile, Mrs. Gantenbein, the plaintiff in this action, took her position in the rear seat on the right-hand side. The defendant did not know the location of Columbia Beach road and was, therefore, compelled to rely upon her passengers to give the needed directions. The plaintiff was familiar with Columbia Beach road, as was also Mrs. Ann Lewis, who seated herself in the front seat to the right of the defendant.

As the automobile proceeded north on the highway

it fell into a line of cars a mile long, which included three or four loaded log trucks. Its place in the line of cars was immediately behind a loaded log truck. The long procession of cars seemingly did not vary its speed. The lowest estimate of speed was 20 to 25 miles per hour and the highest was 30 to 35. The space between the defendant's car and the truck ahead of it was variously estimated as very close, 20 feet, and two car lengths. The defendant's speed was not above that of the other cars, and the distance between her car and the truck in front of her was not significantly less than the distance between the others cars in the line. A witness for the plaintiff, Frederick Sauer, whose car was the third behind the defendant, gave the following testimony:

"Q When you came up there, Mr. Sauer, were you and the two cars ahead of you and the Huckleberry car and the loaded logging truck going, more or less all going about the same rate of speed?

"A Yes.

"Q About how fast was that?

"A Well, I doubt if she was traveling more than between 20 and 25 miles an hour."

As the cars moved ahead in the manner just indicated, none of the guests criticized the defendant's operation of her car. When the defendant's counsel sought to develop that fact further by cross-examining one of the plaintiff's witnesses, the trial judge, in sustaining an objection made by the plaintiff, declared: "No one has criticized her driving up to the time she drew up close to the logging truck and turned."

When the defendant's car arrived at the point on the highway where Columbia Beach road enters, one or more of the passengers exclaimed "This is it" or "Here is where you turn." Thereupon the defendant made a sharp, abrupt left turn without slackening

speed. At that instant an empty log truck driven by the defendant, Richard Patterson, was proceeding south on the highway at a speed of about 40 miles per hour. The Patterson truck struck the defendant's car at its center post, and the plaintiff thereby suffered the injuries for which she seeks redress in this action. One of the plaintiff's witnesses, in describing the place where the plaintiff's car was struck, said: "The greatest damage was right in, at the rear door and the door post, between the two doors."

The hard-surfaced pavement of the highway is 23 feet wide. A yellow line marks its center and divides the pavement into two strips, one for north-bound traffic and the other for vehicles moving in the opposite direction. On each side of the pavement there is a broad graveled shoulder. Thus each lane of the pavement is 11 ½ feet broad. The loaded log truck, which was immediately in front of the defendant, was not more than eight feet wide. Accordingly, there was at least 3 ½ feet of the lane which the truck did not occupy. One of the witnesses testified, "I don't think the truck driver was crowding the yellow line," and the defendant swore that the truck driver "was well over to the right of the highway." No other witness gave testimony upon that subject. From these facts it appears that, as the defendant was following the truck, she could see for some distance into the lane in which southbound vehicles were moving. The defendant estimated that she could see ahead in the left lane at least 200 feet.

One of the witnesses testified that after the party had entered the car, the defendant declared that, in view of the fact that she did not know the way to the Feiselman home, "You girls will have to show me where to go." The defendant testified that the exclama-

tions "Here is where you turn" were made "all of a sudden" and when "we were opposite this road." She swore that at that time the Patterson truck was "about three car lengths away." Others who testified thought that the Patterson truck was very close to the defendant when she turned and that a collision was inevitable.

The record does not indicate whether or not the defendant was aware of the fact that Columbia Beach road entered the highway from the left and that she would, therefore, be required to make a left turn when she reached the intersection. The only occupants of the car [the plaintiff and Mrs. Lewis] who knew the route to the Feiselman home were seated on the right-hand side of the defendant's car. The plaintiff, as we have said, occupied the part of the rear seat to the right and Mrs. Lewis was seated to the right of the defendant. Each of them, accordingly, may have found it difficult to detect the place where the turn would be made until the car had reached the point. That fact possibly accounts for the tardiness of the exclamation "Here is where you turn." A witness for the plaintiff declared that the defendant was almost beyond the intersection when the two made their exclamations. The plaintiff, referring to the defendant, testified, "She turned like if she were going too far and made a short turn." It may have appeared to the defendant when she heard the exclamations that unless she turned immediately she would lose her opportunity of then entering Columbia Beach road. It is clear that she turned forthwith when the exclamations were made.

The following question and answer occurred upon the cross-examination of the defendant by plaintiff's counsel:

"Q Knowing the traffic conditions and knowing you didn't know exactly where to turn, I assume

you were keeping an extra special lookout; be extra-specially careful.

"A Well, yes."

The evidence indicates that three of the defendant's guests were engaged in conversation as the car was proceeding on its way, but no one claimed that the defendant participated in the conversation or diverted her attention in any other way from her task of driving the car.

A police officer, who came to the scene of the mishap shortly after its occurrence, took note of the two vehicles and of the debris left upon the pavement by the impact. As a witness for the plaintiff, he testified: "The debris was closer to the west edge than it was to the center line." He thought that the impact occurred "closer to the west edge than the center line." He marked upon a plat of the intersection, which an engineer had drawn to scale, the place where the debris was found. The mark indicates that the impact occurred close to the west edge of the pavement. Mr. Sauer, whom we have mentioned, thought that when the impact took place "at least one half of her car [defendant's] was still on the highway." He was not certain that all four wheels of the car were still on the pavement when the collision occurred. Another witness believed that the defendant's front wheels had left the pavement and entered into Columbia Beach road when the car was struck. We have mentioned the fact that the defendant's car was struck in the door post and to the rear thereof. A surmise appears to be warranted that if the defendant had succeeded in going a few feet more a collision would not have occurred.

The foregoing, we believe, is a fair statement of

the evidence when viewed most favorably to the plaintiff.

The plaintiff and the defendant agree that our automobile guest statute, ORS 30.110, governs this case. It reads:

> "No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against the owner or operator for injury, death or loss, in case of accident, unless the accident was intentional on the part of the owner or operator or caused by his gross negligence or intoxication or his reckless disregard of the rights of others."

Omitting the averments of paragraph IV of the complaint, which were properly withdrawn from the jury's consideration, the remainder charges:

> "That the defendant Mae Huckleberry was grossly negligent and had a reckless disregard of this plaintiff's rights in the following particulars:
>
> "A In following the vehicles ahead of her too closely for some distance, thus preventing her from having a clear view of approaching traffic.
>
> "B In attempting to make a lefthand turn at said time and place without first ascertaining that she could do so with safety."

■ The situation does not call for another attempt to define the difficult term "gross negligence" which appears in our automobile guest statute. Our decisions have referred at times to gross negligence as great negligence: *Storla v. S. P. & S. Trans. Co.,* 136 Or 315, 297 P 367, 298 P 1065, and *Rogers, Adm'r v. Southern Pacific Co.,* 190 Or 643, 227 P2d 979. This court, like others, has frequently declared that gross negligence is conduct which indicates indifference to legal duties, to the probable consequences of the act, and the rights

of others: *Carlson v. Wagberg,* 183 Or 95, 190 P2d 926; *Rauch v. Stecklein,* 142 Or 286, 20 P2d 387; *Baird v. Boyer,* 187 Or 131, 210 P2d 118. From the decision last cited we quote:

> "* * * Lee v. Hoff, 163 Or. 374, 389, 97 P. (2d) 715, 721, holds that gross negligence is something more than inattention; that it is 'the exhibition in the operation of a car of an I-don't-care-what-happens mental attitude.' * * *
>
> "* * * It cannot be said that his operation of the automobile indicated a mind 'indifferent to the rights of others', or having 'those rash qualities exhibited by the foolhardy', or having an 'I-don't-care-what-happens' attitude. We think that defendant's conduct was 'attributable merely to thoughtlessness, inadvertence, or an error of judgment'. Such conduct does not indicate a reckless disregard of the rights of others."

That conception of gross negligence was expressed again in *Johnston v. Leach,* 197 Or 430, 253 P2d 642, and *Turner, Adm'r, v. McCready, et al.,* 190 Or 28, 222 P2d 1010. In the decision last cited many precedents were abstracted which illustrated the application of the definition thus given to the term.

■ The foregoing interpretations of "gross negligence" suffice for the purposes of this appeal. We do not believe that the record contains any evidence whatever that the defendant's driving, up to the moment when her guests cried out "Here is where you turn," typified indifference to legal duties and the safety of her guests. To the contrary, it appears that for a mile or so, while the plaintiff's car was in the long file of vehicles, she was confronted with hazards of no mean proportions and met them successfully. She was required to be alert lest she collide with the car ahead or be bumped by the one behind. We repeat, there is no

reason whatever for believing that the defendant failed to exercise requisite care up to the moment when her guests exclaimed "Here is where you turn" and she responded to the directive.

The move which the defendant made after hearing the directive "Here is where you turn" was made in haste. Although some of the witnesses swore that the Patterson truck was immediately at hand when the defendant started to turn, the fact remains that her car had completed the turn and was well in the left lane before it was struck. As we have surmised, if she had succeeded in moving ahead a few feet more her car would have escaped injury.

■ Cyclopedia of Automobile Law and Practice, Perm Ed, § 2322, says:

> "* * * but the driver's mere error in judgment, momentary inattention, or loss of presence of mind, does not make out gross negligence."

The text cites *Keefer v. Givens,* 191 Or 611, 232 P2d 808, in which after reviewing many of our previous decisions, we held that inadvertence, thoughtlessness, brief inattention, error in judgment and momentary loss of presence of mind do not amount to gross negligence.

*Baird v. Boyer,* 187 Or 131, 210 P2d 118, declared:

> "There is no substantial evidence in the record to support the allegation that the accident in which plaintiff was injured was caused by defendant's gross negligence or his reckless disregard of the rights of others. It cannot be said that his operation of the automobile indicated a mind 'indifferent to the rights of others', or having 'those rash qualities exhibited by the foolhardy', or having an 'I-don't-care-what-happens' attitude. We think that defendant's conduct was 'attributable merely to thought-

lessness, inadvertence, or an error of judgment'. Such conduct does not indicate a reckless disregard of the rights of others."

The following is taken from *Carlson v. Wagberg,* 183 Or 95, 190 P2d 926:

"In our opinion the evidence at most establishes only a *prima facie* case of ordinary negligence. Defendant undoubtedly committed an error in judgment in undertaking to pass this truck, but he succeeded in avoiding a collision with the oncoming vehicle, although it was a 'close call.' This is not a case where a driver, who sees an automobile approaching from the opposite direction in such close proximity that he could not pass, nevertheless, persists in his course with utter indifference to consequences."

*Ferris v. Von Mannagetta,* 124 Conn 88, 198 A 167, ruled:

"* * * Her misconduct consisted in the fact that, having turned to go toward Milford, she suddenly turned back into the cut-off, not seeing or indeed looking to see where the truck was, although she had observed it approaching. The most that could be said was that the defendant, in the very brief interval, not more than two or three seconds, from the time she turned the car to go back into the cut-off until too late to avoid the accident, failed to see the approaching truck. There is an entire absence of any prior course of dangerous or negligent conduct. All that the misconduct of the defendant could be held to have amounted to was 'in impulsive inadvertence,' 'a momentary bit of careless driving, a failure to exercise due care.' Cook v. Cook, 117 Conn. 655, 656, 166 A. 672, 673; Ascher v. H. E. Friedman, Inc., 110 Conn. 1, 4, 147 A. 263. Her conduct cannot be said to evince 'other than a high degree of negligence, and therefore insufficient to justify a recovery * * * in this

action.' Sadinsky v. Coughlin, supra, 114 Conn. 585, 589, 159 A. 492, 493; Riordan v. Gouin, supra, 119 Conn. 235, 238, 175 A. 686."

From *Elowitz v. Miller*, 265 Mich 551, 251 NW 548, we take the following:

"If we eliminate the testimony of the defendant that ice or gravel caused his car to skid, of which there is dispute, the proximate cause of the accident was the failure of defendant to see the curve at Wall street in time to have slowed down to safely make the turn. But, as was said in Van Blaircum v. Campbell, 256 Mich. 527, 528, 239 N. W. 865: 'Perhaps he was not as watchful as he should have been. * * * This mere failure or inadvertence or lack of care is, at most, ordinary negligence, so called.

"In Bobich v. Rogers, 258 Mich. 343, 241 N. W. 854, the claim of willful and wanton misconduct on the part of the driver of an automobile was predicated on his neglect to reduce the speed of his car when making a turn, and it was said (page 345 of 258 Mich., 241 N. W. 854): 'Whether a turn of the road can be made with reasonable safety at any particular speed depends, of course, upon the character and condition of the road and the skill of the driver. We cannot draw a line beyond which mere speed in making a turn departs from negligence and becomes willful and wanton misconduct.' "

■ We do not believe that the defendant's act in making the turn warrants a finding that she failed to exercise any care for the safety of her guests. In order to hold that her hasty turn amounted to gross negligence, we would have to believe that she was consciously indifferent to the safety of her guests and the probable consequences of her act. Her movement may have shown inadvertence, error in judgment or failure to look in the direction which principally threatened the group with peril. It may have indicated that she was

so concerned with her desire to get her guests to their chosen destination that she acted faster than her mental powers were able to appraise the probable dangers. But if that is the explanation for her act, it does not indicate that she was oblivious to her duties as a driver and that she was unconcerned with the safety of her guests. We do not believe that her quick turn, which seemingly took only a second or two of time, affords a basis for a finding that she was grossly negligent.

The first assignment of error is sustained.

The judgment of the circuit court is reversed.