# HEMMERLING v. OWNERS' AUTOMOBILE INS. CO. et al.
## No. 14741.

Court of Appeal of Louisiana, Orleans.
Jan. 2, 1934.

Alvin R. Christovich, of New Orleans, for appellant.

Robert O'Connor and Borris Burk, both of New Orleans, for appellee.

Wilkinson, Coe, Oser & Nowalsky, of New Orleans, for defendant Owners' Automobile Ins. Co.

WESTERFIELD, Judge.

This suit results from a collision between a Yale taxicab and a Ford sedan, owned and operated by the New Orleans Public Service, Inc., which occurred on the evening of November 21, 1932, at 10 o'clock p. m. at the intersection of Magazine and Peniston streets of this city. The plaintiff, Miss Carrie Hemmerling, sued the Owners' Automobile Insurance Company, the liability insurance carrier of the Yale Taxicab Company, and the New Orleans Public Service, Inc., jointly and in solido, claiming $175.50.

There was judgment as prayed for against the New Orleans Public Service, Inc. The suit as against the Owners' Automobile Insurance Company was dismissed.

Plaintiff, Miss Hemmerling, was a passenger in the Yale taxicab at the time of the accident. The cab was traveling on the right-hand side of Magazine street going up that thoroughfare, and the Ford sedan was moving down Magazine street on its right-hand side. When the driver of the Ford reached the intersection of Peniston street, he turned to the left and across the path of the on-coming taxicab intending to enter Peniston street. He collided with the taxicab before the turn could be completed.

The charges of negligence preferred against the two drivers are the same. Both are said to have failed to have maintained a proper lookout and to have been driving too fast in violation of the city traffic ordinance No. 13702 C. C. S. The driver of the taxicab could not be located and, therefore, did not testify. However, plaintiff and two other occupants of the taxicab testified that the taxicab was going from 25 to 35 miles per hour, but their estimate in this respect was considerably weakened on cross-examination when it appeared that none of them drove automobiles and were not qualified to estimate their speed. No attempt was made to prove that the driver of the cab was not looking in the direction in which he was going.

Frederick Reyer, the driver of the Ford, in his version of the accident, stated that he was going down Magazine street at a speed of about 20 or 25 miles per hour, and as he approached Peniston street he saw the taxicab about three hundred feet away, when, believing that he could turn into that street with safety, he executed a diagonal turn or, as he expressed it, "swerved" into Peniston street having checked his speed to about fifteen miles per hour.

We believe that he was mistaken in his statement that the taxicab was three hundred feet away when he undertook to "swerve" into Peniston street at fifteen miles per hour because the few feet that he had to travel to complete this turn, which is estimated in the record to be from eight to fifteen, could easily have been negotiated before the taxicab could have reached the intersection. Moreover, he was guilty of violating two provisions of the traffic ordinance. Article 6, sections 3(b) and 5(b), provide that a driver intending to make a left turn:

" * * * shall turn around the intersection of the center lines of the two streets at a speed not to exceed ten miles per hour."

"He shall pass to the right of the center of the intersection before turning."

It is evident to us that at the time the driver of the Ford attempted to make the improper turn he had overestimated the distance between his car and the taxicab and that he attempted to make the turn when it was unsafe to do so.

"In turning from his own line of travel across the line of traffic going in the opposite direction, it is incumbent on a driver to exercise a very high degree of care * * *." Huddy's Encyclopedia of Automobile Law (9th Ed.) Book 3-4, p. 215, and authorities there cited.

The driver of a vehicle desiring to make a left-hand turn is not required to wait until the street is clear of all traffic in order to do so, but in crossing the line of traffic he should exercise unusual care for the reason that drivers of other vehicles cannot be charged with the duty of anticipating this maneuver; it being the usual thing for vehicles to maintain their course on the public streets.

Our conclusion, like that of the trial judge, is that the driver of the Ford sedan was alone responsible for the accident.

On the question of quantum the plaintiff is a seamstress in the employ of New Orleans Furniture Factory, where she earned about $10 a week. She lost two weeks' wages as a result of her injuries, which were not very severe. Her left arm and left breast were bruised. The left breast was swollen and required treatment in the form of mas-

sage and application of liniments. Her doctor bill amounted to $3 and medicine cost her $2.50. While her injuries were slight and her expenses small, her claim is very modest, and we are not disposed to interfere with the amount awarded by the trial court.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.