Argued April 10; reversed May 2; rehearing denied June 26, 1945

# LA VIGNE *v.* LA VIGNE

(158 P. (2d) 557)

Before BELT, Chief Justice, and ROSSMAN, KELLY, BAILEY, LUSK, BRAND and HAY, Associate Justices.

*Robert F. Maguire* and *Randall B. Kester*, both of Portland (Maguire, Shields & Morrison, of Portland, on the brief), for appellant.

*John F. Conway*, of Portland (Henry G. Kreis, of Portland, on the brief), for respondent.

BELT, C. J.

This is an action under the so-called guest statute (§ 115-1001, O. C. L. A.) by a father against his son to recover damages for personal injuries resulting from an automobile collision. At the conclusion of the taking of the testimony, the court sustained the motion of the defendant for a directed verdict, but, upon request of counsel for plaintiff, the cause, pursuant to § 6-707, O. C. L. A., as amended by Chap. 309, Oregon Laws for 1941, was submitted to the jury. A verdict was had for the plaintiff and the court, changing its opinion, entered judgment thereon. Defendant appeals.

The sole question is whether there is any substantial evidence tending to show that the defendant is guilty of gross negligence. Defendant is charged with being grossly negligent in that he: (1) Failed to stop or turn his automobile in time to avoid collision with a trackless trolley bus; (2) Failed to keep his automobile under proper, or any, control; (3) Failed to maintain and keep a proper, or any, lookout.

In view of the assignment of error based upon the failure to enter judgment for defendant notwithstanding the verdict, the statement of the facts will be made in the light most favorable to the plaintiff.

Shortly before 5 o'clock in the afternoon of January 18, 1943, the defendant William L. LaVigne was driving his Dodge automobile in a northwesterly direction on North Greeley Street in the city of Portland. Defendant's mother was riding in the front seat and his father and uncle, Paul, LaVigne, were in the back seat. It is undisputed that the plaintiff was the guest of his son and that they were en route to the home of Timothy LaVigne—a brother of the defendant—for the purpose of having dinner. The pavement, 27 feet and 6 inches in width, was dry and defendant was traveling at a speed of approximately 25 miles per hour. No intoxicating liquor is involved. Nor was there any protest or objection by any of the party as to the manner in which the defendant was driving. Defendant was an experienced driver as he had driven a commercial truck for 12 years.

A short distance south of the intersection of North Greeley and North Alberta Streets, the automobile of the defendant began to turn gradually from the right side of the paved street to the left side thereof and in the face of oncoming traffic. In other words, the defendant failed to take the slight turn of the highway to the right, but drove straight ahead, thereby proceeding on the left side of the center line of the street. When the automobile was 6 feet 9 inches east of the west curb of the North Greeley Street, it turned sharply to the right—as shown by the skid marks extending 32 feet on the pavement—and proceeded to a point just over the center line of the street where it collided headon with a trackless trolley bus going down hill in the opposite direction at about the same rate of speed. The bus driver says that he turned to the left side of the street in an effort to avoid the collision but was unable to do so.

Plaintiff claims that the cause of the accident was due to his son's looking at a tanker in the Willamette River nearby and not paying attention to driving on a street heavy with traffic. It is the contention of the insurance company, through the defendant, that the latter lost control of his car and failed to keep a proper lookout on account of having fainted at the wheel. It is observed that defendant was not charged with negligence in driving on the wrong side of the street.

■■ We think the only reasonable deduction that can be made from the evidence is that the collision was caused by the fainting of the defendant driver. If such conclusion is sound, it is clear that a charge of gross negligence can not be based thereon. *Cohen v. Petty,* 65 F. (2d) 820; *Armstrong v. Cook,* 250 Mich. 180, 229 N. W. 433; and *Thayer v. Thayer,* 286 Mich. 273, 282 N. W. 145. As said in Blashfield Cyclopedia of Automobile Law (Perm. Ed.) § 2337:

"Negligence cannot be predicated on recklessness causing injuries to a guest in an accident resulting from the driver's sudden illness, fainting, and loss of consciousness and of control of the car, at least where he does not know and has no reason to believe that he will be subject to such an attack as that which suddenly overcomes him."

The defendant was called by the plaintiff as a "hostile" witness, but his testimony indicated that he hoped his father would obtain a judgment against him as he well knew that the insurance company would be required to pay the same.

Defendant was interviewed by L. L. Clossen of the Claim Department of the Portland Traction Company at the St. Vincent's Hospital on January 23, 1943, and

thereupon signed a statement wherein, among other things, he said:

"* * * I was driving at a moderate rate of speed, about 25 m. p. h. I had been ill for three days prior to this accident and I believe I had fainted because I did not see the trolley coach at any time and remember nothing about the accident. All I know is that I was driving north on Greeley Ave. and awakened in the Hospital. * * * My brother-in-law, Mr. Roman Bauckhaus, Columbia Blvd. was in to see me almost every day since the accident. He has told me how the accident happened * * *. He says Paul had reached over from the rear seat and grabbed the wheel, swinging my auto sharply to the right and into front end of the trolley coach. * * *"

At the bottom of the page the defendant wrote: "I have read and approved the above statement" and then signed his name thereto.

After the defendant left the hospital and went to the home of his brother Timothy, on Gloucester Street, he was interviewed there ten days after the accident by N. G. Anderson, Manager of Claims of the Oregon Automobile Insurance Company, and as a result thereof, signed the statement in which he said:

"I do not know how the accident happened. I was driving along the right side of the road and the last thing I remember clearly was when we turned off of Interstate Ave. and stopped for the lights. We turned west and continued on Greeley. The next thing I remember was when I awakened in the hospital. I had been running not over 20 to 25 miles per hour at any time."

At this same time and place the plaintiff also signed a statement at the request of the agent for the insurance company, in which he said in substance, that he

was not paying any attention to the manner in which the automobile in which he was riding was being driven, and that he first saw the bus when it was 10 or 15 feet away. He said he was "knocked out and awakened on the operating table in the hospital."

Two days prior to this interview, the plaintiff, at the home of his son, at the request of Mr. Clossen, signed a statement in which he said, among other things, that:

"I have rode with my son many times over a period of several years and know him to be a very careful and cautious driver and I believe he must have fainted just prior to this accident. Had he been conscious I am sure this accident would not have happened. My reason for believing William had fainted was due to the fact that he had been suffering from an attack of the flu and had not eaten for two days previous to this accident."

G. A. Tenney, an officer of the Portland Police Force, questioned the defendant at the hospital concerning the accident, about two hours after it occurred, and testified that he told him that his fainting was the cause of the accident. Officer Morehouse, of the police force, also participated in the questioning of the defendant at such time, and it was stipulated that, if present, he would testify substantially to the same effect.

Clossen testified, without objection, that Mrs. LaVigne, the mother of the defendant, told him about how the accident happened, and said:

"Well, about the sum and substance of it was that just prior to the impact she observed her son sitting with his head slumped over the wheel and his arms down by his side."

Mrs. LaVigne did not testify, as she died before the time of trial.

The truth of the statements signed by the plaintiff and the defendant was not challenged on trial. Indeed, both plaintiff and defendant admitted specifically that everything in the statements was true. Relative to what the defendant driver told the police officers the record thus speaks:

Q. "You told them did you not that you had fainted and didn't remember anything that happened at the time of the accident?

A. "I said I thought I must have, because it seemed to me if I had known what I was doing I would have avoided it."

■■ We are not unmindful that there is some testimony of a vague and indefinite character tending to show that the defendant was looking at the tanker shortly prior to the accident. Defendant said: "Well, we started looking over there possibly a block before we hit." Q. "About a block before you hit?" A. "Yes, glancing back and forth." Such evidence falls short of showing gross negligence, or a reckless disregard of the rights of others. There is no evidence as to the time in which defendant looked away from the highway, nor as to the exact place where he looked. Ordinarily, momentary inattention, or looking away from the road for a short distance does not amount to gross negligence. *Silver v. Silver,* 108 Conn. 371, 143 A. 240, 65 A. L. R. 943; *Craig v. McAtee,* 160 Wash. 337, 295 P. 146; *Beaton v. Dawson,* 303 Mass. 429, 21 N. E. (2d) 965; *Black v. Neill,* 134 Neb. 764, 279 N. W. 471, and *Bashor v. Bashor,* 103 Colo. 232, 85 P. (2d) 732, 120 A. L. R. 1507. Furthermore, such evidence can

not be reconciled with the undisputed admission that fainting was the cause of the accident.

Respondent plaintiff cites *Crowley v. Fisher,* 284 Mass. 205, 187 N. E. 608, and *Richards v. Richards,* 86 N. H. 273, 166 A. 823, as sustaining his contention that whether defendant was grossly negligent is a question of fact for the jury. In the Crowley case the defendant was operating an automobile in which the plaintiff was riding at a speed of 25 to 30 miles per hour, on a gravel road, with a ''little hump in the middle'' and ''beaten tracks where the automobile was supposed to go.'' The driver ''crouched and looked up through the windshield'' at a passing aircraft, and continued to do so for seven or eight seconds, whereupon the automobile ran out of the beaten tracks and began to zigzag for a distance of 200 feet, increasing its speed to 50 or 60 miles per hour before striking the telephone pole. In the Richards case, the driver was looking away from the car and the guest passenger screamed at him, but he ''was still looking that way.'' There were other complaints about the manner in which the defendant was driving. One witness testified that she told the driver: ''Earnest, look where you are going,'' but he continued on and ''in a short time we crashed.''

We agree that the issue of gross negligence was properly submitted to the jury in the two cases cited by respondent, but can see slight analogy between the factual situations therein involved and that in the instant case.

Obviously, the decision concerning the question of gross negligence hinges upon the particular facts and circumstances of each case. The difficulty lies not in the statement of the law, but rather in its application

to the particular factual situation involved. We see no need to make a restatement of the law relative to gross negligence. The subject has been fully covered in *Ross v. Hayes, ante* p. 225, 157 P. (2d) 517; *Layman v. Heard,* 156 Or. 94, 66 P. (2d) 492; *Rauch v. Stecklein,* 142 Or. 286, 20 P. (2d) 387; and in other cases deemed unnecessary to cite.

The judgment in favor of plaintiff is reversed and one is here entered for the defendant.