Argued March 5; affirmed April 1; rehearing denied June 10, 1947

## CALLANDER *v.* BROWN ET AL.
## STONE *v.* BROWN ET AL.
(178 P. (2d) 922)

*Glenn R. Jack,* of Oregon City (Butler & Jack, of Oregon City, on brief), for appellants.

*Richard Devers* and *Hugh L. Biggs,* of Portland (with Hart, Spencer, McCulloch & Rockwood, of Portland, on brief), for respondent.

Before Rossman, Chief Justice, and Lusk, Belt, Bailey and Winslow, Justices.

## LUSK, J.

These are appeals in two personal injury cases which were consolidated for trial in the Circuit Court. The plaintiffs Kathryn A. Callander and Elizabeth J. Stone were guest passengers in a Willys-Knight automobile driven by the defendant Brown, which sustained a collision with a truck driven by the defendant Allen. There were verdicts for both plaintiffs against both defendants. Thereafter the court, on motion, entered judgment for Brown notwithstanding the verdict, and from that judgment the plaintiffs have appealed. The sole question for decision is whether there is evidence in the record of gross negligence on the part of the defendant Brown.

The accident occurred in Oregon City at about eight o'clock on the evening of June 30, 1945. Shortly before, Brown, who was well acquainted with one of the plaintiffs, who are sisters, chanced upon them in a restaurant in Oregon City where they were having their dinner, and they accepted his invitation to drive them to the home of another sister at Gladstone, a few miles to the north. Their intended route was north on Washington Street to Fourteenth Street, thence west on Fourteenth to a main highway known as the Super Highway, thence north again to their destina-

tion. On arriving at the intersection of Washington and Fourteenth Streets Brown stopped his car and then moved slowly out into the intersection, making a left-hand turn to go west on Fourteenth Street. At approximately the center of the intersection his car sustained a collision with the truck of the defendant Allen, which was being driven south on Washington Street and had entered the intersection from the north. The plaintiffs were thrown from the Brown automobile and injured.

The plaintiffs charged Brown with gross negligence in that he (1) failed to keep a lookout; (2) saw or should have seen the truck driven by defendant Elmer A. Allen approaching said intersection, and saw or should have noticed that said truck was being driven at a high and dangerous and reckless rate of speed, and with said knowledge entered said intersection when a collision was imminent; and (3) failed to yield the right-of-way, and, in the face of impending danger, attempted to make a left-hand turn.

There is evidence of the following facts:

At the time of the accident it was daylight, the sun was shining, and the pavement dry. Washington Street, which runs north and south, is a through street, forty feet in width from curb to curb. Fourteenth Street, which intersects it, is the same width. A short distance east of Washington Street, Fourteenth Street comes to a dead end. Washington Street, as it approaches Fourteenth from the south, is on a steep grade. At the intersection it levels off. There is heavy traffic at the intersection coming off of Fourteenth Street from the west into Washington Street, and, likewise, leaving Washington Street to go west on Fourteenth Street.

■ Brown, with his two passengers, brought his car

to a stop at the foot of the grade and back of the curb line, and waited there until three cars coming from the west on Fourteenth Street had stopped at the west side of Washington Street and proceeded around the intersection and north on Washington Street. Brown then, according to his testimony, "looked and went on around" (i. e., to his left), after having first given a signal for a left-hand turn. There was a clear view to the north for a distance of 1,000 feet or more. But Brown testified that he did not see the defendant Allen's truck nor a station wagon, which, according to some of the evidence, preceded the truck into the intersection and turned west on Fourteenth Street. Where the truck was immediately before Brown started his car again is in dispute. A disinterested witness testified that it was then about three hundred feet from the intersection going thirty-five miles per hour, and that, before entering the intersection, it speeded up to forty to forty-five miles per hour. Allen testified that he was only thirty feet from the intersection at the time that Brown started, and that his speed was never over twenty-five miles per hour, while, according to the testimony of another witness, it was as low as fifteen miles per hour. The uncontradicted evidence is that Brown's speed in the intersection did not exceed four miles per hour. Brown's car traveled approximately thirty-five feet from his starting place to the point of collision; Allen's truck anywhere from four to ten times as far during the same period, according to the view that one might take of the evidence as to Allen's speed. We, of course, cannot determine the fact. Our decision must be based on the evidence most favorable to the plaintiffs, which, in the view of their counsel, seems to be that Allen's truck was very close to the intersection when Brown

began his movement, and that the speed of the truck was about fifteen miles per hour.

As stated, Brown testified that he did not see the truck before the collision, and, when asked if he knew how the truck and his car came together, he answered, "All I know is, that I was hit, and that is all I do know."

The plaintiff, Elizabeth J. Stone, testified that Brown drove very carefully and very slowly down the Washington Street hill; that he was keeping a lookout straight ahead; that there was no conversation among the occupants of the car; that he came to a full stop before entering the intersection and that he put his hand out of the window before starting again. Mrs. Stone was seated in the front seat on the right side of the car, her sister in the center. She testified that she saw the approaching truck, and said to her sister, "We are going to get hit, you better get your purse up", and that Mrs. Callander said, "It is in the back seat." Mrs. Stone, according to her testimony, had her own purse in her hand, and put it in front of her face. She was unable to fix the location of the Brown car at the time she saw the truck, but, when asked whether it was "just a flash" from the time she saw the truck until the impact, she answered, "That is it." Mrs. Callander, who remembered nothing of the circumstances of the accident except that they stopped at Fourteenth Street and let the traffic go by, testified that she did not hear the statement of her sister, and Brown testified that he did not hear it.

The defendant Allen testified that he saw Brown's car come to a stop at the foot of the hill when Allen was about 200 feet north of the intersection; that Brown was then in the right-hand lane of travel not more than a foot from the curb on the east side of

Washington Street instead of near the center of the street as Brown testified; that he saw Brown give a signal for a right-hand turn as though he were going east on Fourteenth Street, and he thought Brown intended to do so; that he (Allen) was then thirty feet from the intersection, and thereafter looked to the right watching a Ford car which had stopped in Fourteenth Street preparatory to entering the intersection from the west; and that he next saw Brown's car when it was about four feet away; that he applied his brakes, but that it was too late then to avoid a collision.

The evidence indicates that the point of collision was in the northwest quarter of the intersection quite close to the center, and that the right front fender and wheel of the Brown car came into contact with the left front tire and fender and left end of the bumper of the truck. The Brown car, badly damaged, was shoved a distance equal to about its own width, and was facing south when it came to rest. The truck moved on further to the south, stopping close to the curb on Washington Street at the southwest corner of the intersection.

The evidence, in our opinion, presents a question of fact as to whether the defendant Brown was guilty of ordinary negligence, but nothing more. In its essence the charge against him in the complaint is based upon his failure to see the truck and yield to it the right of way. His failure in this respect is the burden of the argument for the plaintiffs in this court. That a jury could have found him negligent we think is clear, but proof of ordinary negligence, without more, will not warrant submission to the jury of the issue of gross negligence. *Rauch v. Stecklein*, 142 Or. 286, 290, 20 P. (2d) 387. And in this case there is no evidence of that indifference to the rights of others which characterizes

gross negligence. This is true whether the truck was 300 feet or 30 feet from the intersection at the time the Brown car moved into the intersection. The defendant Brown seems to have exercised a rather high degree of care for the safety of his passengers and himself when he stopped to allow three cars over which he had the right-of-way to pass through the intersection ahead of him. His speed of four miles per hour or less as he proceeded cannot be said to indicate heedlessness or recklessness. Doubtless he should have seen the truck of the defendant Allen, for the view was unobstructed. But it cannot be legitimately inferred that his failure to see it was more than an inadvertence—a momentary lapse of vigilance. Or, if it should be said—what has not been argued—that, notwithstanding Brown's denial, the jury would have been justified in finding that he did see the truck, since it was plainly visible; still, we think that in this view, it would have been nothing more than an error of judgment for him to proceed into the intersection. His speed, we repeat, did not exceed four miles per hour, and it could hardly be argued, and has not been, that he engaged in a foolhardy endeavor to beat the truck across the intersection. Nor could a finding of gross negligence be based upon Allen's testimony that Brown was in the wrong lane of traffic for a left-hand turn and gave an incorrect signal, for there is no such charge in the complaint. *Hamilton v. Finch,* 166 Or. 156, 172, 109 P. (2d) 852, 111 P. (2d) 81.

*Anderson v. Colucci,* 116 Conn. 67, 163 Atl. 610, cited by counsel for the defendant Brown, was a stronger case for the plaintiff than the case at bar. There the evidence was that the defendant drove his automobile at night at an excessive rate of speed— one witness called it "terrific"—and collided with a

truck which the brilliant headlights of the defendant's car should have made plainly visible to him; that there was very little traffic; and that the defendant neither applied his brakes nor swerved from his lane of traffic to avoid the collision. In an action by a guest passenger the court held that there was no evidence of gross negligence, and a judgment of nonsuit was affirmed. Counsel for plaintiffs urge that the case aids them because the court said in its opinion that there was no evidence that the defendant "was warned or requested to do anything different than what he did", and they point to the evidence in this case that the plaintiff Mrs. Stone exclaimed before the accident, "We are going to get hit." Had it appeared that this occurred in time to enable Brown to avoid a collision and that, nevertheless, he disregarded the warning, there would be merit in the argument. But this is not the case. Mrs. Stone could not recall that the Brown car started up and moved into the intersection after it had made its stop. She had no recollection of seeing the automobiles which passed around the intersection and in front of them while they waited. She testified that the only car she saw was the truck, and the effect of her testimony is that at the time she saw it and made the exclamation, "it seemed to be right on top of us", and that it was "just a flash" from that time until the collision occurred. This evidence, in our opinion, does not justify an inference that defendant Brown heedlessly disregarded a timely warning.

Tests or standards which aid in determining whether a case of gross negligence has been made out are stated and applied in a number of recent decisions of this court. See *Lawry v. McKennie,* 177 Or. 604, 164 P. (2d) 444; *LaVigne v. LaVigne,* 176 Or. 634, 158 P. (2d) 557; *Ross v. Hayes,* 176 Or. 225, 157 P. (2d)

517, 158 A. L. R. 452; *Rauch v. Stecklein,* supra. Each case, of course, presents its own peculiar facts. At times the evidence may be such that the line separating gross negligence from ordinary negligence becomes blurred and indistinct. We think that this is not such a case, and that we are well within our own precedents in holding that the proof here fails to disclose conduct on the part of the defendant Brown in the operation of his automobile, such as the guest statute intends should constitute a basis of recovery.

■ We see no merit in the argument of counsel for the plaintiffs that the circuit judge lost the power to enter judgment notwithstanding the verdict because, at the trial, in denying a motion for a directed verdict, he expressed the opinion that the evidence as to defendant Brown was sufficient to take the case to the jury. Nothing in the statute (Ch. 149, Oregon Laws 1945) gives any support to the view that the legislature intended to prevent the trial judge from changing his mind after denying a motion for a directed verdict, and acting accordingly. One of the virtues of the statute, indeed, is that it permits that very course to be pursued.

The judgments appealed from are affirmed.

---

WINSLOW, J. (Pro tempore) Dissenting.

I regret that I am unable to agree with my brethren. I shall not attempt to detract in any degree from the statement of facts stated in the opinion of the court. I shall add a few minor details.

The Allen truck was a three-ton, 1933 model, Pierce-Arrow, loaded with gravel and cement. There was substantial evidence that as it approached the intersection it picked up speed for the hill, and that, in

its attempt to pick up speed, it made sufficient noise that one witness could hear it who was at least six hundred feet away.

The testimony of Mrs. Stone set forth in the opinion does not take into account all of her cross-examination. In addition to the testimony referred to in the opinion, she testified:

"A When I seen the truck coming, I asked my sister to put her purse up, 'We are going to get hit,' and she said, 'It is on the back seat.'

"Q Did you say it in that tone of voice?

"A Yes sir; and I held my purse up to my face, and it saved my face, but my purse is a wreck.

"Q You said it very deliberately?

"A Yes, sir. I says, 'We are going to get hit by this truck, see it coming,' I says, 'He has either lost his brake or is drunk,' and she says, 'It is in the back seat'."

Again:

"Q You did tell him to look out for the truck?

"A No, I didn't. I said, 'Look at the truck, it is coming—

"Q How far away was the truck, approximately, in your best judgment?

"A I wouldn't know.

"Q You made an estimate over in Glenn Jack's office,—I mean here in the court reporter's office, didn't you, that it was about, in your opinion when you said that it was about a quarter to a half block away?

"A Well, that is the way it looked to me, and it looks to me yet that way, but I wouldn't know the distance. You asked me the distance.

"Q Well, I know you couldn't tell exactly how many feet it was, Mrs. Stone. No one could, but when you made that statement to your sister, Mrs. Callander—I might ask you this question, if this

question wasn't asked you and this is the answer that you made,—this is the question I am asking, reading from page 27 (of deposition): 'Did you tell your sister or Mr. Brown, 'Look at that truck coming'? Answer, 'I told them both.'

"A I told them, but she answered, he didn't.

"Q And from the time you saw and observed the truck you had plenty of time to tell your sister and Mr. Brown to 'Look at that truck coming,' and tell your sister to get her purse and put it up in front of her face?

"A Yes, sir.

"Q And she had time to tell you that her purse was on the back seat?

"A Yes, sir."

Now, the evidence shows that, at least in the opinion of one witness, the blocks were two hundred feet. This estimated distance fits into the picture as given by other witnesses very accurately and, in the opinion of the writer, shows that Brown was warned of the approach of the truck in plenty of time to stop, travelling at four miles per hour. One other detail. The place where Brown stopped before entering the intersection was slightly on the hill giving him what might be termed a grandstand view of the entire situation.

With these minor additions to the picture as presented in the opinion of the court, we shall consider the law applicable. We are here dealing with one of the most, if not the most, hazardous operations of a motor vehicle—a left hand turn against oncoming traffic across a busy intersection.

Brown is charged with attempting to make this movement in the face of impending danger without keeping a lookout and without giving the right of way to the truck which it is alleged was coming at a high and dangerous rate of speed. In making this move-

ment, Brown was confronted with three duties: (1)
To keep a lookout. 1 Blashfield, Cyclopedia of Auto-
mobile Law and Practice (perm. ed.) §§ 681, 682. (2)
To see that said movement could‚be made in safety
and to give a statutory signal to any other vehicle
affected by such movement. § 115-335, subdivision (a),
O. C. L. A. (3) To yield the right of way to the truck
if said truck was so close to the intersection as to con-
stitute an immediate hazard. § 115-337, subdivision
(c), O. C. L. A.

The care required of Brown under the circum-
stances was greater than that care which is ordinarily
required of a driver in making an ordinary move-
ment with his automobile. Huddy in his Cyclopedia of
Automobile Law (9th ed.), vol. 3-4, p. 215, states it in
this manner: "In turning from his own line of travel
across the line of traffic going in the opposite direction,
it is incumbent on a driver to exercise a very high
degree of care."

Blashfield in his Cyclopedia of Automobile Law
and Practice (perm. ed), vol. 2, § 1049, describing the
same duty, uses the term "unusual care." *Hemmer-
ling v. Owners' Automobile Ins. Co. et al.* (La. App.),
151 So. 676, describes it as "unusual care." *Felix
et al. v. Adelman,* 113 N. J. L. 445, 174 A. 565, 566,
says that it may be referred to as "great care," or "a
high degree of care." In *Anderson v. Cassidy,* 119 N.
J. L. 331, 196 A. 653, the court said: "The instruction
to the jury that the driver of the Buick car in attempt-
ing to turn and cross in the face of approaching traffic
must exercise a high degree of care was well fortified
by the decisions of this court."

The fact that there was no obstruction to Brown's
view, together with the fact that he testified that he
did not see this three-ton truck coming into the inter-

section picking up speed and the additional fact that he did not hear the warning of Mrs. Stone, justifies the inference that he was not looking, that his attention was diverted. *Layton v. Ogonoski*, 256 Ill. App. 461, 468. In *Off v. Crump*, 40 Cal. App. 173, 180 P. 360, 361, the court said: "The very fact that he did not see plaintiff, in broad daylight, crossing the street, which was not congested with traffic, is evidence in itself that he was not paying attention to his driving."

The writer feels that it was evidence of gross negligence for Brown to enter this narrow, busy intersection and turn to the left across the line of oncoming traffic, without looking or giving attention to the contemplated movement; that such conduct indicates an indifference to the probable consequences of the act and is evidence of the driver's reckless disregard for the rights of others. In addition to this, the evidence justifies a finding by the jury that in doing this he disregarded a warning given to him by one of his guests when the two vehicles were from fifty to a hundred feet apart. He was going four miles an hour and never attempted to stop. The jury was justified in finding, and no doubt did find, that he made no pretense or attempt to comply with the plain mandate of the statute which required him, before making that left hand turn, to first determine that it could be made in safety.

It is because this movement is so hazardous that we have this statute. A deliberate violation of this plain statutory duty is, in the opinion of this writer, as much gross negligence as a failure of a driver to heed a traffic signal. *Rauch v. Stecklein*, 142 Or. 286, 292, 20 P. (2d) 387. This statutory duty is a red light to every driver warning him of the hazards of a left hand turn across the line of oncoming traffic.

We would not go so far as to hold that every driver

making a left hand turn and coming in contact with an oncoming car is guilty of gross negligence. If the oncoming car was actually exceeding the speed limit and if the driver making the left hand turn saw it and was honestly mistaken about its speed, a different situation would be presented. But that element is not in these cases. Brown never saw anything to be honestly mistaken about. The jury would have been justified, and no doubt did find, that he was not looking and that he was giving his attention to something else.

In *Layton v. Ogonoski,* supra, the appellate court of Illinois had before it for consideration a case very similar to the one before this court now. The complaint charged ordinary negligence, and by separate count charged willful and wanton misconduct in connection with the accident. The accident occurred at an intersection in East St. Louis. The respondent was riding in a car travelling west across the intersection. Appellant was travelling east and turned left at the intersection to go north. The cars collided. Respondent was injured. The action was brought upon the charges referred to. The court said:

> "* * * An intentional disregard of a known duty necessary to the safety of the person or property of another, and an entire absence of care for the life, person or property of others such as exhibits a conscious indifference to consequences, makes a case of constructive or legal wilfulness such as charges the person whose duty it was to exercise care with the consequences of a wilful injury. Walldren Express & Van Co. v. Krug, 291 Ill. 472. There was evidence from which the jury might have found that the driver of appellant's car suddenly turned north at Eighth Street, in front of the car in which appellee was riding, without warning or signal indicating his intention to turn, when it was apparent that such a heedless and reckless act would be

liable to lead to serious injury to life and property. Appellant's driver testified that before making the turn he looked and did not see the oncoming car in which appellee was riding. In view of the undisputed fact that the car in which appellee was riding had either arrived at Eighth Street or had proceeded across, when appellant's driver undertook to cut the corner, the jury might reasonably infer that appellant's driver was not looking or giving proper attention to traffic coming from the east."

In this case, like the cases at bar, the driver's view was unobstructed but he did not see the other car.

Again:

"* * * for one to drive a large, powerful automobile weighing two tons on any public highway where there is congestion and traffic, especially at street intersections, without being alert and giving attention to other vehicles, is negligence of such a gross degree as to give rise to the inference of at least constructive wilful and wanton negligence."

In *Michiels v. Oser*, 19 La. App. 24, 139 So. 497, two cars approaching from opposite directions entered an intersection at substantially the same time. One car turned to the left across the other car's line of traffic. An accident occurred. The city of Alexandria had an ordinance similar to our statute regarding the making of left hand turns. The court said:

"When two vehicles going in opposite directions enter an intersection at the same time, the one intending to change its course by a left turn should let the approaching vehicle, which intends to continue its straight course, pass, before attempting a left turn and failure to do so is gross negligence."

In *Hagen v. Metzger*, 130 Cal. App. 497, 20 P. (2d) 117, the host driver made a sudden right hand turn across oncoming traffic. An accident occurred. The

guest was injured. The court held that there was evidence of gross negligence and said:

"* * * The plaintiff might well contend that when the defendant was in a place of safety he saw a car approaching from the north; that it was midnight and his powers of vision and measuring distances were thus greatly limited; and that notwithstanding these circumstances he intentionally and deliberately turned his eyes from the on-coming car and looked in the opposite direction, and, keeping his outlook in that direction, proceeded in low gear to make the turn and in doing so drove into the path of the on-coming car without again looking to see how close it was."

In *Binford v. Purcell*, 2 Cal. App. (2d) 87, 37 P. (2d) 732, plaintiff was a guest of the defendant. The case did not involve a left turn. It involved lookout. A car stopped in the street a distance of about a hundred twenty feet in advance of the driver. She ran into the car and injured her guest. The court said:

"When we apply this definition to the facts before us, we are forced to the conclusion that the finding of gross negligence is supported by the evidence. Defendant testified that she did not see the Smith car until the moment of the impact. According to the evidence in the record, her car must have been at least 120 feet distant from the Smith car when it had backed from the curb and was stopped in the street in front of her. A person driving an automobile on a city street is required to anticipate that others will be using it, and a vigilant lookout for them must be maintained. That she drove her automobile for a distance of at least 120 feet without seeing another car standing in her path, and plainly within her view, had she looked, and into the rear of that car, justifies the conclusion that she was driving with 'the want of slight diligence' and with 'an entire failure to exercise'

that slight care which the law required of her; in other words, she was guilty of gross negligence and liable to her guest for the damages resulting therefrom. Section 141 ¾, California Vehicle Act, in effect Aug. 14, 1929 (St. 1923, p. 517 as added by St. 1929, p. 1580)."

While this court has held that "ordinarily, momentary inattention, or looking away from the road for a short distance does not amount to gross negligence" (*LaVigne v. LaVigne*, 176 Or. 634, 158 P. (2d) 557), yet it never has been held by this court nor any other court, so far as this writer has been able to find, that where one continues to look away while making a left turn across the line of oncoming traffic he is not guilty of gross negligence.

Blashfield, Cyclopedia of Automobile Law and Practice, (perm. ed. 1946) vol. 4, part 1, at page 421, states this rule: "The continued or protracted failure of the operator to maintain a proper lookout along the road ahead of his vehicle may constitute gross negligence." Here we have protracted failure while making a left turn against oncoming traffic.

In the opinion of the court, it is said: "The defendant Brown seems to have exercised a rather high degree of care for the safety of his passengers and himself when he stopped to allow three cars over which he had the right-of-way to pass through the intersection ahead of him." In the first place, it is not clear from the record that he had the right of way over these other cars. Subdivision (b), § 115-337, O. C. L. A., provides that after these cars had come to a full stop and after they had yielded to vehicles in the intersection or approaching so closely on the through highway as to constitute an immediate hazard, they had a right to proceed. However, in the opinion of this writer, this

matter is wholly beside the point. Brown may have been ever so careful at other times and places. That is not the test by which these cases should be determined. These cases should be determined by what he did at the time of the accident and on the basis of the charges in the complaints.

The court in its opinion then continues: "His speed of four miles per hour or less as he proceeded cannot be said to indicate heedlessness or recklessness." No one has made that contention. It is not even an issue in the cases. The contention here is that while so travelling he turned left without looking and without yielding the right of way to the truck which was then entering and attempting to cross the intersection at a high and dangerous rate of speed. It might be that Brown would have shown more care had he travelled faster.

The opinion then continues: "Doubtless he should have seen the truck of the defendant Allen, for the view was unobstructed." He was required to see the truck and his attempt to turn left immediately in front of the truck at any rate of speed without seeing the truck, without looking, is, in the opinion of this writer, evidence of gross negligence.

The opinion continues: "But it cannot be legitimately inferred that his failure to see it was more than an inadvertance—a momentary lapse of vigilance." In the opinion of this writer, it is not important so far as the issues in these cases are concerned as to the length of time Brown failed to look for the truck. The important thing is that he did not look, at the time he made the left turn, immediately in front of this truck. Furthermore, the record we have quoted above clearly shows that considerable time elapsed while he was not looking. According to the opinion of the

court, he travelled thirty-five feet at four miles an hour without seeing the truck and while doing so he turned left. In the opinion of this writer that is more than a "momentary lapse of vigilance."

The opinion then continues: "Or, if it should be said—what has not been argued—that, notwithstanding Brown's denial, the jury would have been justified in finding that he did see the truck, since it was plainly visible; still, we think that in this view, it would have been nothing more than an error of judgment for him to proceed into the intersection."

We find two faults with that statement. In the first place, no one is complaining because he proceeded into the intersection. It was his turning left and failing to yield the right of way that caused this accident, and those are the charges in the complaint. Second, can this court say that if Brown did see the truck thirty feet from the intersection coming at thirty-five miles per hour picking up speed for the hill—we repeat—can this court say under those circumstances, as a matter of law, Brown's attempt to make a left hand turn in front of the truck was an error of judgment? Was this not a question of fact for the jury? In the opinion of this writer such conduct was plain foolhardy. He never had a chance. It should be remembered that he was warned by one of his guests. His guest saw this truck. His guest realized the danger. His guest knew he did not have a chance. Driving at four miles per hour, he could have stopped almost instantly had he paid any heed to the warning given to him by his guest.

Reference is made to the case of *Anderson v. Colucci*, 116 Conn. 67, 163 A. 610. That case is the reverse of these cases. In that case the accident did not occur at an intersection. The guest was riding in the car that was going straight through. The auto

wrecker turned left immediately in front of the car in which the guest was riding. The case does not disclose how close the car in which the guest was riding was to the auto wrecker when it turned left across the path of the automobile. The driver of the automobile did not see the wrecker although the law required him to have lights making objects visible two hundred feet, but the wrecker may have turned into the automobile's vision even when it was closer to the auto wrecker than the two hundred feet. It may well have been that the driver of the automobile was guilty of only a "momentary lapse of vigilance," as the auto-wrecker came across his line of traffic. The record does not show anything as to the time element or as to the distance element. That case would be in point if appellants had been guests in the Allen truck and if Allen had not seen Brown. But it does not involve a situation where the host turned left across the line of oncoming traffic, without looking.

The case is authority for the statement that where a party says he did not see, the jury has a right to infer that he was not looking. That is largely the basis of this dissent. When Brown testified that he did not see the truck, this testimony was sufficient to justify the jury in finding that he was not looking, and this condition continued from the time he left his position before entering the intersection and during the entire time he entered and travelled through the intersection to the place of the accident. He never did see the truck. The jury had a right to infer that at no time was he looking because at all times the truck was in plain view.

One other thing that leads the writer to the same conclusion is that the record in these cases shows that the jury was most thoroughly instructed with reference to gross negligence. Three different definitions were

given. There was no uncertainty about the instructions. They were clear, to the point, understandable. The jury so instructed found that Brown was guilty of gross negligence.

Again, the record shows that when the matter first came up for consideration before the trial judge, he likewise felt there was evidence of gross negligence on the part of Brown. The court said:

> "That is the only thing that holds your man in here. In this case Brown testified he could see all of the way down there but couldn't see this truck coming. He must not have been observing or looking or keeping a proper lookout. * * *
>
> "* * * He said he could see clear down the highway. It might or might not be gross negligence. It is a question of fact. If I were passing on this, frankly, I wouldn't hold him in this case, but I don't think it is a question for me. It is a question for the jury."

We believe the court correctly stated the matter. It was clearly submitted to the jury under instructions that might almost be termed drastic. The jury found Brown was guilty of gross negligence. Judgment was entered upon that verdict. Later the court entered judgment for the defendant notwithstanding the verdict. In this respect the writer feels that the court was in error. The verdict should be reinstated and judgment entered thereon in favor of appellants and against Brown. Entertaining these views, I find it impossible to concur in the opinion of the court, and I therefore dissent.

BELT, J., concurs in this dissent.