Argued May 21, reversed June 10, petition for rehearing
denied July 22, 1959

## REESE *v.* BRIDGMON

340 P. 2d 573

*Herbert M. Schwab* argued the cause for appellant. On the brief were Dusenbery, Martin, Schwab, Beatty & Parks, Portland.

*Harlow F. Lenon* argued the cause for respondent. On the brief were Lenon & Lenon and Schedler & Moore, all of Portland.

Before McALLISTER, Chief Justice, and WARNER, SLOAN and MILLARD, Justices.

MILLARD, J. (Pro Tempore)

This is an appeal from a judgment of the Circuit Court of Multnomah County, based upon a jury verdict allowing plaintiff $27,500 damages against one of the defendants, Robert L. Bridgmon, in an action wherein plaintiff, as a guest passenger, was, on account of injuries sustained in a collision, seeking to recover damages from said defendant on the theory of gross negligence. The other defendant, Domenick DePinto, was charged with ordinary negligence, but, since the verdict and consequent judgment resulted in his favor, only Robert L. Bridgmon appeals. In discussing this case, we will refer to Robert L. Bridgmon as the defendant and when occasion requires will refer to the other defendant as DePinto.

Briefly, plaintiff's complaint, which alleges in the usual form, charges defendant with gross negligence in failing to keep his station wagon under control, failure to keep a lookout for other vehicles, and particularly the flat rack truck of DePinto, and traveling at a rate of speed which was greater than reasonable and prudent and which did not permit defendant to

exercise proper control over his vehicle so as to avoid a collision with DePinto's truck when it became, or should have become, apparent to him. Defendant was also charged with being intoxicated, but that issue was properly removed from the jury's consideration on account of lack of evidence. Defendant's answer admits the collision but denies the allegations of gross negligence.

As his first assignment of error, defendant contends that the court erred in failing to direct a verdict for defendant and in denying defendant's motion for judgment notwithstanding the verdict. Both of these motions are based upon the ground that there was insufficient evidence of gross negligence to go to the jury.

In passing upon the questions, we are required to assess the evidence in the light most favorable to plaintiff. Briefly, it appears that early in the morning of October 23, 1955, at about 2:00 a. m., plaintiff was riding as a guest passenger in the front seat of defendant's station wagon being driven by him along Northeast 102d Avenue, Portland, when it collided with a parked truck owned by DePinto. As a result of the collision, plaintiff suffered serious injuries. Prior to that, plaintiff and defendant (who were married persons but not to each other) had been at a tavern with Mr. and Mrs. Floyd D. Rogers, who were mutual friends and acquaintances and through whom plaintiff and defendant had on that occasion first become acquainted. Plaintiff had been riding with Mrs. Rogers, but, at defendant's invitation and urging, had entered his car, it being the intention of the whole party to go to a restaurant. Defendant, with plaintiff as a passenger in his car, took the lead, with the Rogers following in their automobile. Plaintiff testified that,

a short time before the collision, defendant importuned her for a kiss, which she refused. Plaintiff next says that defendant sought to place her hand on his private parts, which she resisted by pulling her hand back. Plaintiff testified that she did not become "scared" by this incident. Defendant totally denies this conduct. Immediately following termination of this attempted intimacy, plaintiff looked back and saw the lights of the Rogers car close behind, and at that point the collision occured with DePinto's truck which was parked adjacent to the highway. Plaintiff's testimony indicated that this truck was so parked that a portion of the bed protruded on the paved portion of the road into defendant's lane of traffic. Defendant DePinto's testimony was to the effect that the body of the truck was two or three feet off the paved portion. Immediately after the accident, defendant said to plaintiff, "I sure fixed you." The cross-examination disclosed that plaintiff, in her deposition taken prior to the trial, had been unable to remember whether the kissing incident was the first attempted intimacy or not. The accident happened at night, the car lights were on, the air was clear and the road was straight and dry. Defendant's car never left the road. In addition, plaintiff testified as follows:

"Q How fast was he going, do you know?
"A I don't know.

"Q Did he ever leave the road before the accident?
"A No.

"Q Stayed on the road all the time?
"A As far as I know, yes.

"Q Did he swerve to the right or the left before the accident?
"A No.

"Q Did he increase or decrease speed before the accident?

"A I don't really know.

"Q And you don't know how fast he was going?

"A No.

"Q Was he driving in any way abnormal or unusual?

"A Not that I noticed, no.

"Q As far as you could see, he was driving in a perfectly normal manner at all times up to the time of the accident. Is that correct?

"A Yes.

"Q And you have no idea how fast he was going?

"A No, I don't.

"Q Except it seemed to you like a normal speed?

"A Yes.

"* * *

"Q From what you had seen him, and you had seen him for two or three hours constantly at that time, hadn't you?

"A Yes, I had.

"Q And he drove in a perfectly normal manner?

"A Yes.

"Q And he did not appear to be going at an excessive rate of speed?

"A No.

"Q And he didn't swerve or drive to one side or the other or drive erratically in any manner?

"A No.

"Q And he never left the road?

"A No.

"Q And the next thing you knew there was an accident and part of the bed of the truck was sticking through the windshield where you were sitting?

"A Yes.

"Q At the time of the accident you were sitting on the right-hand side, and he was sitting on the left-hand side?

"A Yes.

"* * *

"Q And you have no specific idea as to how fast Mr. Bridgmon was going at all?

"A No, I don't.

"Q You have no recollection that he either put on the brakes or speeded up or make any kind of a turning maneuver just before the accident?

"A No."

Mr. Rogers, one of plaintiff's witnesses and the driver of the car following, testified as follows:

"MR. SCHEDLER: Did you follow Mr. Bridgmon's car out as he left?

"A Yes.

"Q Were you right behind his car during most of this trip?

"A Yes.

"Q Where was Mrs. Reese sitting in the front seat of Mr. Bridgmon's car?

"A Well, she was sitting on the right-hand side of Mr. Bridgmon's car.

"Q About where, taking the right-hand side and dividing it into near Mr. Bridgmon, center and near the door?

"A Oh, I would say nearer the door.

"Q How close behind Mr. Bridgmon's car were you at the time of the accident?

"A Oh, I was about, four car lengths about, about four car lengths.

"Q Did you see anything in the highway ahead of Mr. Bridgmon's car prior to the accident?

"A Yes, I seen an object.

"Q Can you tell—do you have any recollection as to where that object was?

"A Well, as we were driving down the road, it looked to me like the object was right in front of Mr. Bridgmon's car.

"Q Would that be on the shoulder, on the highway, in the parking or where?

"A It looked to me like it was right on the highway.

"* * *

"Q And you were right behind him going about thirty, thirty-five miles an hour down this road?

"A That's right.

"Q And it wasn't raining; the pavement was not wet?

"A That's right.

"Q And it was late at night or early in the morning and very little traffic; is that right?

"A That is right.

"Q And he proceeded in a normal manner without swerving to the left or right?

"A That's right.

"Q And he was on the highway ahead of you at all times until the accident?

"A That's right.

"Q Now, as a matter of fact, when you saw this, which you thought was an object on the road, you were behind his car, were you not?

"A That's right.

"Q And you saw it on the outer edge of his headlights, to the right of his car, did you not, over toward the right edge of the pavement?

"A No, the object looked to me like where I could see it right down the road.

"Q You couldn't see over the top of his car?

"A No, but I could see it down the side of his car.

"Q Down the right side of his car?

"A Yes.

"Q And that was just an instant before the collision, was it not?

"A That's right.

"Q And did not at that time his car just before the impact appear to swerve slightly to the left?

"A To the left?

"Q That's right, as if to avoid it?

"A That's right.

"Q But at all times he was not off the road; he was on the highway directly ahead of you, and he merely swerved toward the center?

"A That's right.

"Q And then came the crash?

"A That's right.

"Q Were there any cars coming toward you at that time?

"A No.

"Q Nothing on the highway at all?

"A No."

There is no evidence that defendant was not looking through his windshield as he drove along. Plaintiff did not testify that defendant ever took his eyes off the road or that he failed to drive in a normal manner up until the accident. He had his lights on high beam. The area where the accident happened was residential in character, lighted by street lamps, and signs in the area indicated a posted speed of 25 miles per hour. The traffic was very light at that hour. Defendant's speed did not exceed 35 miles per hour. Defendant's testimony differed very little from that of plaintiff and her witnesses except that he denied improper conduct. From all this we are asked to hold

that there was sufficient evidence of gross negligence to present a jury question.

■ Gross negligence has been defined in part as such a want of care that would cause an inference of conscious indifference of consequences. It is something more than inattention and is the exhibition in the operation of a car as "I-don't-care-what-happens" mental attitude. *Lee v. Hoff,* 163 Or 374, 389, 97 P2d 715. See, also, *Keefer v. Givens,* 191 Or 611, 627, 232 P2d 808. It is something more than ordinary negligence. *Callender and Stone v. Brown,* 181 Or 279, 284, 178 P2d 922. Ordinarily, momentary inattention, or looking away from the road for a short distance does not amount to gross negligence. See *La Vigne v. La Vigne,* 176 Or 634, 635, 158 P2d 557, and cases there cited. Generally, the question of gross negligence must be resolved with reference to the particular circumstances of each case since there is no general definition that applies in all cases. *Storm v. Thompson,* 155 Or 686, 692, 693, 64 P2d 1309.

■ Does the conduct of defendant in this case indicate a conscious indifference of consequences or an I-don't-care-what-happens attitude? While the designated speed was 25 miles per hour, under the circumstances as they then existed there is no substantial evidence of excessive speed and, in fact, all of the testimony indicated that defendant was driving his car at normal speed for that time and place.

There is not one iota of evidence from any of plaintiff's witnesses that defendant was not looking ahead, other than such as may be inferred from the fact that the accident happened. There is nothing in the record other than that, indicating directly that, at the time of the suggested intimacies, defendant was

delinquent in respect to the operation of the car. Plaintiff did not directly testify that at the time defendant was in any way apparently unobservant of the road ahead or its dangers. Defendant's oral exclamation after the accident only indicated his regret at the result. No one contends here that defendant is guilty of intending to injure plaintiff. All in all, the record at most reveals momentary inattention and nothing over and above ordinary negligence. Certainly there is nothing here to indicate a conscious indifference to consequences.

It follows, therefore, that the trial court should have allowed the motion for directed verdict and, failing in that, the motion for judgment notwithstanding the verdict. In view of these conclusions, it becomes unnecessary to review the other assignments of error. The judgment of the trial court is, therefore, reversed as to the defendant Robert L. Bridgmon.